IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 17, 2016 Session

# IN RE CANNON H.

**Appeal from the Juvenile Court for Shelby County**
**No. X4469    Dan H. Michael, Judge**

_____

**No. W2015-01947-COA-R3-JV – Filed October 5, 2016**

_____

This appeal involves a dispute between unmarried parents regarding the modification of a residential parenting schedule for their minor child. Following a hearing, a juvenile court magistrate modified the parties' existing parenting schedule to permit Father to exercise parenting time with the child during the first, third, and fifth weekends of each month. Father requested a rehearing before the juvenile court judge. The case was reheard, and the juvenile court judge ordered a similar parenting schedule permitting Father to exercise parenting time during the second, fourth, and fifth weekends of each month. The juvenile court also ordered Father to pay Mother's attorney's fees in the amount of $3,500. On appeal, Father takes issue with the parenting schedule and award of attorney's fees ordered by the juvenile court. Having reviewed the record and considered the arguments presented, we affirm the juvenile court's parenting schedule; however, we vacate the award of attorney's fees and remand the case to the juvenile court for a determination as to the amount and reasonableness of the attorney's fees incurred.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Vacated in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Bradley C. Ball, Lakeland, Tennessee, for the appellant, C.H.

Margaret M. Chesney and Rebecca A. Bobo, Memphis, Tennessee, for the appellee, D.H.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

Petitioner/Appellant C.H. ("Father") and Respondent/Appellee D.H. ("Mother") are the natural parents of the minor child at issue in this case–Cannon H., born in November 2010.[1] Mother and Father were never married to each other and separated before Cannon's first birthday. Father is an active duty pilot in the National Guard and a pilot for FedEx. His National Guard and FedEx obligations require him to travel roughly 15 days per month, and his schedule varies from month to month. Mother is a certified nurse anesthetist. She works two 24-hour shifts per week, and her schedule also varies from month to month. Both parents reside in Shelby County.

In November 2011, Father filed a petition in the Shelby County Juvenile Court to be designated as Cannon's primary residential parent. Through mediation, the parents reached an agreement to designate Mother as primary residential parent and adopt a flexible parenting schedule that would accommodate their variable work schedules. The agreement provided that Father would submit his work schedule to Mother within 24 hours of receiving it. Mother would then submit a proposed parenting schedule to Father within 48 hours that provided him with 8 to 11 days of parenting time for the month. After receiving Mother's proposed schedule, Father would have 24 hours to request changes, and Mother would address his requests promptly. In December 2012, a juvenile court magistrate entered an agreed order reflecting the arrangement, and the order was confirmed and entered as an order of the juvenile court.

In April 2014, Father filed a petition requesting that the juvenile court's order be modified to designate him as Cannon's primary residential parent. Father alleged that, in light of changed circumstances since the prior order, designating him as primary residential parent would serve Cannon's best interests. Specifically, he alleged that Mother had a history of mental instability that manifested itself during angry and violent outbursts in front of the child. At the same time, Father also filed a petition to be designated as the primary residential parent of his daughter from a subsequent relationship with a different woman– Piper, born in June 2013. By agreement of the parties involved, the magistrate heard both petitions on November 12, 2014.[2] After the hearing, the magistrate entered written findings

---

[1] In cases involving a minor child, it is this Court's policy to redact the names of the parties sufficient to protect the child's identity.

[2] Although Father's two petitions were heard together in juvenile court, the cases remain separate. This appeal concerns Cannon only.

and recommendations ordering that a more structured parenting schedule be implemented despite the logistical difficulties presented by Father's variable work schedule. The magistrate ordered that Father exercise parenting time with Cannon from Friday to Monday during the first, third, and fifth weekends of each month, on certain holidays, and for extended periods in the summer. The magistrate also ordered Father to pay Mother's attorney's fees in the amount of $3,500. The magistrate's findings and recommendations were confirmed and entered by the juvenile court judge as an order of the juvenile court on December 1, 2014.

Father timely filed a request for a rehearing before the juvenile court judge.[3] The rehearing occurred on July 30, 2015.

During the rehearing, Father argued that the magistrate's structured parenting schedule would not allow him to enjoy the maximum participation possible in Cannon's life because it failed to accommodate his variable National Guard and FedEx schedules. Father testified that he is required to attend training in Georgia one weekend of each month in connection with his National Guard duties. The specific training weekends for each month are published in September of the preceding year and typically fall on the first non-holiday weekend of each month. On those weekends, Father flies to Georgia on Friday night and returns to Memphis on Monday night. Father testified that although the commanders of his unit had allowed some flexibility in the past when the training conflicted with his parenting time, he did not expect that to continue on a long-term basis. In addition to his National Guard duties, Father testified that he travels approximately 10 to 12 days per month in connection with his employment as a FedEx pilot. His FedEx schedule varies from month to month and is usually set by the 25th day of the preceding month. Father testified that FedEx pilots choose their monthly flight assignments in a bidding process based on seniority. He explained that, because of seniority, approximately 60% of the other pilots choose their flight assignments before him thereby limiting his ability to arrange his work schedule around the magistrate's structured parenting schedule.

Father presented four alternative parenting schedules that he maintained would better accommodate his schedules at both the National Guard and FedEx while allowing both parents to enjoy the maximum participation possible in Cannon's life. The first proposed schedule provided that Father would have until the 25th day of each month to choose any 15 days to exercise parenting time during the following month; Mother would have until the end of the month to veto two of the chosen days. The second proposed schedule provided that

---

[3] Tennessee Code Annotated section 37-1-107(d) (2014) permits any party to request a rehearing before a juvenile court judge of certain matters heard by a magistrate.

the parents would exercise parenting time on an alternating weekly schedule. The third proposed schedule provided that Father would have until the 25th day of each month to choose 15 days to exercise parenting time during the following month but could not choose any days during the first and third weekends of the month. Finally, the fourth proposed schedule provided that Father would exercise parenting time during the second, fourth, and fifth weekends of each month and choose additional days so that he exercised a total of 15 days of parenting time each month. Father acknowledged that none of the proposals was likely to provide a precisely structured parenting schedule but argued that their flexibility would serve Cannon's best interests by allowing both parents to enjoy the maximum involvement possible in her life. He insisted that the parties could operate under a flexible parenting schedule if they worked together and communicated effectively. He also maintained that the parties could reduce the amount of money they spent on Cannon's nanny if Mother submitted her work schedule to him before he bid on FedEx flights so that he would be able to bid around it.

Mother, on the other hand, testified that she preferred the magistrate's structured parenting schedule despite her variable work schedule. Mother testified that her employment as a certified nurse anesthetist requires her to work two 24-hour shifts per week. Her shifts may be scheduled during the week or on the weekend. She has seven weeks of vacation per year and can choose one weekend and one weekday per month to take off. Mother testified that her monthly schedule is generated by a computer and set three months in advance. Once the schedule is set, Mother and her coworkers are free to trade shifts with each other. Mother testified that she had allowed Father to exercise extra parenting time with Cannon in the past when she was unavailable but that a nanny usually stays with him overnight when she has to work during her parenting time.

Despite her variable work schedule, Mother expressed a preference for the magistrate's structured parenting schedule to the parties' original mediated parenting schedule. She testified that the flexibility of the mediated parenting schedule made planning difficult for her and for the nanny because Father expected them to be able to adjust on short notice. She explained that the parties occasionally had to adjust and negotiate on the fly when Father picked up or dropped flights for FedEx on short notice. Mother described her relationship with Father as "extremely difficult and extremely contentious" and expressed her preference for a parenting schedule that limited their communication as much as possible. She admitted that the magistrate's parenting schedule did not perfectly accommodate the parties' variable work schedules but maintained that a "perfect" parenting schedule did not exist under the circumstances. She urged the juvenile court to adopt the magistrate's parenting schedule and maintained that she would continue to allow Father to spend extra time with Cannon when her work schedule interfered with her scheduled parenting time.

Two licensed psychologists also testified at the rehearing. Dr. Jolene Bailey met with Father prior to the rehearing and reviewed materials that he provided to her. She did not meet with Mother or Cannon. Dr. Bailey opined that, based on her interactions with him, Father sincerely wanted to be as involved as possible in the lives of his children. Additionally, she testified that children generally benefit when they have as much involvement as possible from both parents. Nevertheless, she stated that the foremost goal of any parenting schedule should be to provide structure and consistency for the child. She explained that parenting schedules that require additional communication can be problematic when the parents have a contentious relationship. Dr. Catherine Collins testified that she conducted a psychological evaluation of Father in connection with the simultaneous proceedings related to Piper. She testified that Father was "engaging and agreeable" and that his interactions with the children were "appropriate" and "largely positive." She expressed a concern, however, that Father had anger issues related to Mother. She testified that Father described Mother as "volatile and irascible and aggressive and out of control." Although she did not evaluate Mother, Dr. Collins accepted an email from Mother, with Father's permission, that she testified, "not surprisingly . . . presented a different picture." She testified that there was no tangible evidence to indicate which parent's account of the relationship was more accurate.

The juvenile court released its findings and conclusions in an order entered on September 14, 2015. In its order, the court noted the parties' stipulation that the birth of Father's second child, Piper, was a material change in circumstances warranting a reexamination of the existing custody arrangement. The court ordered that Mother continue to serve as Cannon's primary residential parent and that Father be permitted to exercise parenting time from Friday to Monday during the second, fourth, and fifth weekend of each month, on certain holidays and school breaks, and for two extended periods in the summer. Additionally, the court ordered Father to pay Mother's attorney's fees in the amount of $3,500.[4] Father filed a timely notice of appeal to this Court.

## ISSUES

Father presents the following issues on appeal, restated from his appellate brief:

---

[4] In its oral ruling, the juvenile court stated that Mother would be awarded $7,000 for attorney's fees. In its written order, however, the juvenile court ordered Father to pay Mother's attorney's fees in the amount of $3,500. "It is well-settled that a trial court speaks through its written orders–not through oral statements contained in the transcripts[.]" *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015).

1. Whether the juvenile court erred in ordering a residential parenting schedule that does not permit Father to enjoy the maximum possible participation in the child's life.

2. Whether Tennessee Code Annotated section 36-6-106(a), as applied in this case, violates the equal protection provisions of the United States Constitution and Tennessee Constitution.

3. Whether the juvenile court erred in ordering Father to pay Mother's attorney's fees.

Mother presents the following issue on appeal, restated from her appellate brief:

1. Whether Mother is entitled to an award of attorney's fees incurred as a result of this appeal.[5]

## STANDARD OF REVIEW

Our review of a trial court's factual findings on appeal is de novo upon the record, accompanied by a presumption that the trial court's findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). We review a trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569.

"There are no hard and fast rules for devising a parenting plan." *Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn. Ct. App. 2004). The process is fact-driven and requires the court to carefully weigh numerous considerations. *Id.* The scope of our review is therefore limited when considering the details of a residential parenting schedule on appeal. As the Tennessee Supreme Court has explained:

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the

---

[5] Mother also raises in her appellate brief the issue of whether the juvenile court erred in failing to order Father to reimburse Mother for expenses she incurred for the child's benefit. At oral argument, however, Mother's attorney represented to this Court that this issue has since been resolved by the parties. We therefore decline to address it in this Opinion.

trial judge." "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record."

*Armbrister v. Armbrister*, 414 S.W.3d 685, 693 (Tenn. 2013) (internal citations omitted). The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court but "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives[.]" *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

## ANALYSIS

### *Residential Parenting Schedule*

The decision to modify an existing parenting arrangement requires a two-step analysis. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003). When a petition to modify a parenting plan is presented, the threshold issue is whether there has been a material change of circumstance since the existing plan took effect.[6] Tenn. Code Ann. § 36-6-101(a)(2)(B) (2014). If a material change in circumstances has occurred, then the court must determine whether modifying the parenting plan as requested would be in the child's best interests. Tenn. Code Ann. § 36-6-106(a) (2014).

In this case, the juvenile court found, and both parties agree, that the birth of Father's second child, Piper, was a material change of circumstances that occurred since the December 2012 agreed order went into effect. While the juvenile court's order does not explain how Piper's birth affected the viability of the existing parenting schedule for Cannon, it was not required to do so in light of the parties' agreement on the issue. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 15 (Tenn. Ct. App. 2015) (holding that trial courts are not required

---

[6] See *Armbrister v. Armbrister*, 414 S.W.3d 685, 697–704 (Tenn. 2013), for further discussion of the historical development and current status of the concept of material change of circumstances in Tennessee.

to make a material change of circumstances inquiry when the parties agree to modify a parenting plan).  It was therefore appropriate for the juvenile court to craft a new parenting schedule for the parties.

Tennessee Code Annotated section 36-6-106(a) provides that all custody determinations regarding a minor child should be made based on the best interest of the child.  In taking the child's best interest into account, however, the statute also directs the court to order an arrangement that "permits both parents to enjoy the maximum participation possible in the life of the child" consistent with 14 enumerated factors and any other factors deemed relevant by the court.  Tenn. Code Ann. § 36-6-106(a)(1)–(14).[7]

---

[7] Section 36-6-106 provides:

The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of

The juvenile court's order reflects that it considered each of the 14 factors listed in Section 36-6-106(a). The court found that five of the factors favored Mother, six of the factors favored neither party, and three of the factors were not applicable.[8] Based on its findings, the court determined that Cannon would be best served by residing primarily with Mother. Father does not take issue with the juvenile court's findings as they relate to each factor, nor does he argue that it erred in designating Mother primary residential parent. Rather, Father contends that the juvenile court erred by failing to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child[.]" *See* Tenn. Code Ann. § 36-6-106(a). He suggests that the juvenile court could have satisfied that statutory directive by: (1) allowing Father to reschedule parenting time that conflicts with his National Guard service; (2) providing each parent with a right of first refusal to care for the child when the other parent is unavailable; (3) scheduling Father's

---

confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules[.]

Tenn. Code Ann. § 36-6-106(a)(1)–(14).

[8] Specifically, the juvenile court found that factors (1), (5), (8), (10), and (11) favored Mother, factors (2), (4), (6), (7), (9), and (14) favored neither party, and factors (3), (12), and (13) were not applicable.

weekend parenting time with both Cannon and Piper to run from Thursday to Monday;[9] or (4) adopting a parenting plan in which Mother and Father would alternate weeks with Cannon.

Father's argument suggests that permitting both parents to enjoy the maximum participation possible in the child's life should be the court's primary consideration in ordering a custody arrangement. That is not the case. The plain language of Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible participation in the child's life only to the extent that doing so is consistent with the child's best interests. Indeed, the General Assembly has expressly declared that in any proceeding involving custody or visitation of a minor child, the overarching "standard by which the court determines and allocates the parties' parental responsibilities" is "the best interests of the child." Tenn. Code Ann. § 36-6-401(a) (2014); *see also Armbrister*, 414 S.W.3d at 693 (citing Tenn. Code Ann. § 36-6-106(a)); *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983) (stating that for courts adjudicating child custody disputes, "the welfare of the child has always been the paramount consideration").

Although not expressly stated in its order, the juvenile court clearly determined that a parenting schedule requiring frequent communication and collaboration by Mother and Father would not serve Cannon's best interests. Having reviewed the evidence of the vitriolic relationship between Mother and Father, we agree. Flexible parenting arrangements that require frequent collaboration can "undermine the psychological well-being of [the] parents" and expose "[the child] to high levels of parental conflict" when the parents cannot resolve disputes amicably. *Swett v. Swett*, No. M1998-00961-COA-R3-CV, 2002 WL 1389614, at *7 (Tenn. Ct. App. June 27, 2002). Such a custody arrangement requires "a harmonious and cooperative relationship between both parents" to be successful. *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn. Ct. App. 1987); *see also Jahn v. Jahn*, 932 S.W.2d 939, 942 (Tenn. Ct. App. 1996). The record before us clearly demonstrates that Mother and Father have not had that sort of cooperative relationship in the past. Their inability to operate under the flexible mediated parenting schedule incorporated in the December 2012 agreed order is the very reason this modification was necessary. While Father remained hopeful at the rehearing that the parties could work together successfully under a flexible parenting plan, we do not share his optimism. The only conclusion to be drawn from the record before us is that these parties need a parenting schedule that requires as little communication and collaboration as possible. We therefore readily reject Father's suggestions that we alter the juvenile court's parenting schedule by allowing Father to reschedule parenting time that

---

[9] The juvenile court's order permits Father to exercise parenting time with Cannon from Friday to Monday during the second, fourth, and fifth weekend of each month. Father exercises parenting time with Piper from Thursday to Sunday during those same weekends.

conflicts with his National Guard schedule, by providing a right of first refusal to care for the child when the other parent is unavailable, or by adopting an alternating weekly parenting schedule. Each of those suggested alterations would require increased communication between the parties that would diminish the parenting schedule's chances of long-term success. Additionally, we decline to tweak the juvenile court's parenting schedule so that Father's parenting time with both of his children overlaps completely. Father exercises parenting time with Piper from Thursday to Sunday during the second, fourth, and fifth weekend of each month. The juvenile court's parenting schedule permits him to exercise parenting time with Cannon from Friday to Monday during those same weekends. Father suggests that the juvenile court could have maximized his participation in the children's lives by ordering a parenting schedule that allows him to have both children from Thursday to Monday during those weekends. While such an arrangement would maximize Father's total parenting time with Cannon, the juvenile court's parenting schedule will allow him to develop an individual relationship with him as well as a shared relationship with both children. Under the abuse of discretion standard, we are not permitted to substitute our judgment for that of the trial court when the decision being reviewed involves a choice among several acceptable alternatives. *Gonsewski*, 350 S.W.3d at 105. The parenting schedule ordered by the juvenile court falls squarely within the spectrum of rulings that could reasonably result from an application of the correct legal standards to the facts of this case. As such, we find no legal or factual basis for disturbing its decision.

### *Constitutional Challenge*

In his appellate brief, Father contends that Tennessee Code Annotated section 36-6-106(a), as applied in this case, violates the equal protection provisions of the United States Constitution and Tennessee Constitution. Specifically, he argues that factors (1), (2), (5), (6), (9), and (10) of Section 36-6-106(a) inherently favored Mother because she automatically took custody of Cannon at birth.[10] *See* Tenn. Code Ann. § 36-2-303 (2014) ("Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother."). While we do not see how Mother's automatic custody of Cannon at birth could have possibly prejudiced Father in his attempt to modify an initial parenting arrangement that he agreed to after mediation, we decline to address the issue fully for several reasons. First, as Mother points out in her appellate brief, nothing in the record indicates that this issue was raised at any point in the juvenile court proceedings. This Court "is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are *presented and*

---

[10] Those factors require the court to consider the child's relationship with each parent (factor 1), each parent's capacity to perform parenting responsibilities (factor 2), the degree to which each parent has been the child's primary caregiver (factor 5), the emotional ties between each parent and the child (factor 6), the child's relationships with other relatives and involvement with his or her physical surroundings or activities (factor 9), and the importance of stability in the child's life (factor 10). Tenn. Code Ann. § 36-6-106(a).

*decided* in the trial courts[.]" *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001). Having thoroughly reviewed the record submitted on appeal, we conclude that Father's constitutional challenge of Section 36-6-106(a) was neither presented to nor decided by the juvenile court. Additionally, the Office of the Attorney General must be notified of any effort to challenge the constitutionality of a Tennessee statute. Tenn. Code Ann. § 29-14-107(b) (2012); *see also* Tenn. R. Civ. P. 24.04; Tenn. R. App. P. 32. Nothing in the record indicates that such notice was provided in this case. In light of the foregoing, we conclude that this issue has been waived for full consideration on appeal.

### *Attorney's Fees*

Father contends that the juvenile court judge erred in awarding Mother $3,500 for her attorney's fees without hearing proof as to the amount or reasonableness of the attorney's fees she incurred. Tennessee courts are vested with the discretion to award attorney's fees in child custody cases. Tenn. Code Ann. § 36-5-103(c) (2014). While Section 36-5-103(c) provides that the attorney's fees awarded in a child custody case must be "reasonable," it is not always necessary that there be a "fully developed record" when the trial court makes an award of attorney's fees. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992). In certain circumstances, the trial court may set the fees of lawyers with or without a prima facie showing by the requesting party of what a reasonable fee would be. *Wilson Mgmt. Co. v. Star Distrib. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988.) In such cases, the judge may feel that the proceedings have sufficiently acquainted him or her with the relevant factors to make a proper award of attorney's fees without proof or the opinions of other lawyers. *Kahn v. Kahn*, 756 S.W.2d 685, 696-97 (Tenn. 1988). Nevertheless, if the trial court is prepared to fix a reasonable fee without hearing proof, the party being made to pay must be accorded a fair opportunity to cross-examine the requesting party's witnesses and present its own evidence on the issue. *Id.* at 696 (quoting *Wilson*, 745 S.W.2d at 873).

In this case, the juvenile court magistrate ordered Father to pay Mother's attorney's fees in the amount of $3,500. However, the ultimate status of a magistrate's order depends on the subsequent history of that order. *In re Zamorah B.*, No. M2011-00864-COA-R3-JV, 2013 WL 614449, at *3-4 (Tenn. Ct. App. Feb. 15, 2013). Tennessee Code Annotated section 37-1-107(d) provides that any party may appeal a magistrate's order by requesting a de novo hearing before the juvenile court judge. This Court has interpreted the statute to contemplate a new trial on both issues of law and fact as if no other trial had occurred. *Kelly v. Evans*, 43 S.W.3d 514, 515 (Tenn. Ct. App. 2000) (holding that the statute "contemplates a traditional hearing de novo as in an appeal from a general sessions court to a circuit court"); *see also Ware v. Meharry Med. Coll.*, 898 S.W.2d 181, 184 (Tenn. 1995) ("The circuit court does not review the general sessions court's decision. Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the

- 12 -

circuit court."). When a party seeks review of a magistrate's decision, the juvenile court must therefore conduct a de novo hearing and decide the issues without deference to the magistrate's actions. The only evidence presented to the juvenile court judge on the issue of Mother's attorney's fees was a statement by Mother's attorney in her closing argument that Mother incurred $7,700 in attorney's fees after Father filed his request for the rehearing. Based on the record before us, it does not appear that Father was afforded any subsequent opportunity to cross-examine witnesses or present evidence on the issue during the rehearing. For that reason, we vacate the juvenile court's award of attorney's fees and direct the juvenile court to hold a hearing on remand to determine the amount and reasonableness of the attorney's fees incurred. In doing so, the juvenile court should consider both the hearing before the magistrate judge and the rehearing before the juvenile court judge.

Mother requests an award of attorney's fees incurred on appeal pursuant to the authority in Tennessee Code Annotated section 36-5-103(c). Litigants are generally expected to be responsible for their own attorney's fees in the absence of a statute or contractual provision providing for the payment of attorney's fees. *Elliot v. Elliot*, 149 S.W.3d 77, 88 (Tenn. Ct. App. 2004). Section 36-5-103(c) applies to awards of attorney's fees incurred on appeal and vests this Court with the authority to award fees and costs in cases involving custody or support of a minor child. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). Nevertheless, there is still no absolute right to such fees. *Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005). Whether to award attorney's fees incurred on appeal is a matter within this Court's sound discretion. *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014). In determining whether to award fees, we consider the ability of the requesting party to pay his or her own attorney's fees, the requesting party's success on appeal, and whether the appeal was taken in good faith. *Shofner*, 181 S.W.3d at 719. Having considered the applicability of those factors to this case, we decline to award Mother's attorney's fees on appeal. Although Mother successfully defended the juvenile court's parenting arrangement on appeal, the record does not indicate that she is unable to pay her own attorney's fees or that Father's appeal was taken in bad faith. Accordingly, we hold that each party should bear the burden of his or her own appellate legal expenses.

In the alternative, Mother argues that she is entitled to an award of attorney's fees incurred in defending a frivolous appeal. By statute, this Court is vested with the discretion to award damages when we determine that an appeal is frivolous or taken solely for delay. Tenn. Code Ann. § 27-1-122 (2000). However, the statute must be interpreted and applied strictly so as not to discourage legitimate appeals. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 342 (Tenn. 2010). We do not find that this appeal is frivolous or taken solely for delay. We therefore also decline to award attorney's fees on this basis.

## CONCLUSION

The judgment of the juvenile court is affirmed in part and vacated in part, and this case is remanded to the juvenile court for further proceedings consistent with this Opinion. The costs of this appeal are taxed one-half to the appellant, C.H., and one-half to appellee, D.H., for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE