# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 25, 2016 Session

## VALERIE MILLER v. JACKSON-MADISON COUNTY GENERAL HOSPITAL DISTRICT, ET AL.

### Appeal from the Circuit Court for Madison County
### No. C-13-132     Donald H. Allen, Judge

_____

### No. W2016-01170-COA-R3-CV – Filed December 8, 2016
_____

This is a case, brought pursuant to the Tennessee Governmental Tort Liability Act, involving a plaintiff who was injured when she slipped and fell in a municipal hospital owned and operated by the defendant. The plaintiff alleged that she suffered injuries after slipping in water that was on the hospital's floor. Following a bench trial, the trial court found that the defendant had no actual or constructive notice of the water and entered judgment in its favor. The plaintiff appealed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD P.J., W.S., and BRANDON O. GIBSON, J., joined.

Christopher L. Taylor, Memphis, Tennessee, for the appellant, Valerie Miller.

Patrick W. Rogers, Jackson, Tennessee, for the appellees, Jackson-Madison County General Hospital District and West Tennessee Healthcare, Inc.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On May 10, 2012, Valerie Miller went to Jackson-Madison County General Hospital to visit her brother, who was a patient. At some point during the visit, Ms. Miller left her brother's room to find a nurse. When she did so, she allegedly slipped and

fell in water that was on the floor in the hallway. As a result of the fall, she allegedly suffered injuries to her back and knee.

On May 10, 2013, Ms. Miller filed a complaint in the Madison County Circuit Court against Jackson-Madison County General Hospital District and West Tennessee Healthcare, Inc. (together, the "Hospital") pursuant to the Tennessee Governmental Tort Liability Act (the "GTLA").[1] She alleged that the Hospital negligently caused her injuries by failing to "maintain the hallway and protect Plaintiff from hidden and latent defects of which the Defendant had knowledge." She requested $25,000 in damages. The Hospital filed an answer denying the material allegations of her complaint.

Following a period of discovery, the case proceeded to a bench trial.[2] Ms. Miller testified that she was injured when she slipped in water that was on the floor in the hallway outside of her brother's room. She testified that she did not see anything on the floor as she proceeded down the hallway but noticed a trail of water on the floor after she fell. Although she testified that the trail of water led to a food cart against the wall in the hallway, she stated that she did not inspect the food cart. She testified that she did not know whether the water was leaking from the food cart or had been spilled near it. Additionally, she testified that she did not know how long the water had been on the floor or whether any of the Hospital's employees were aware of it prior to her fall. The Hospital stipulated that its employees were primarily responsible for moving the food cart, but no other evidence was presented on the issue of liability.

The trial court entered a memorandum opinion and final order on May 3, 2016. The trial court found the evidence insufficient to demonstrate that the Hospital or its employees caused or had actual or constructive notice of the water on the floor prior to Ms. Miller's fall. It therefore entered judgment in favor of the Hospital. Ms. Miller timely filed a notice of appeal to this Court.

**ISSUE PRESENTED**

Ms. Miller raises the following issue on appeal, restated from her appellate brief:

1. Whether the trial court erred when it held that employees of Jackson-Madison County General Hospital were not negligent when the water

---

[1] The Jackson-Madison County General Hospital District and West Tennessee Healthcare, Inc. are governmental entities responsible for operating Jackson-Madison County General Hospital and therefore subject to the provisions of the GTLA.

[2] The GTLA provides that circuit courts "shall hear and decide such suits without the intervention of a jury." Tenn. Code Ann. § 29-20-307 (2012).

- 2 -

that caused Ms. Miller to fall came from a food cart that was primarily in the control of its employees?

## STANDARD OF REVIEW

When reviewing a trial court's findings following a bench trial, this Court reviews the record de novo and presumes that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. 2005). We review the trial court's resolution of questions of law de novo with no presumption of correctness. *Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015).

## DISCUSSION

The doctrine of sovereign immunity provides that a suit may not be brought against a governmental entity except to the extent that the governmental entity has consented to be sued. *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996). The doctrine is recognized by the Tennessee Constitution and has been a part of Tennessee common law for more than a century. *Id.* (citing Tenn. Cons. Art. I, § 17; *City of Memphis v. Kimbrough*, 59 Tenn. 133 (1873)). In 1973, the doctrine of sovereign immunity was codified when the General Assembly enacted the GTLA. *See* Tenn. Code Ann. §§ 29-20-101 to 408. The GTLA governs claims against counties, municipalities, and other local governmental agencies, removing their immunity in limited and enumerated instances for certain injuries. Tenn. Code Ann. §§ 29-20-202 to 205.

There is no dispute in this case that the Hospital is a "governmental entity" as that term is defined in the GTLA. Tenn. Code Ann. § 29-20-102(3)(A). It was therefore amenable to suit pursuant to Tennessee Code Annotated section 29-20-204, which provides:

(a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved[.]

- 3 -

That section essentially codifies the common law obligations of owners and occupiers of property embodied in premises liability law. *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn. Ct. App. 2002). Generally, the common law imposes on such persons a duty to exercise ordinary care and diligence in maintaining the premises in a safe condition. *Cornell v. State*, 118 S.W.3d 374, 378 (Tenn. Ct. App. 2003). This includes an affirmative duty to protect against dangers of which the owner or occupier knows or with reasonable care and diligence might have discovered. *Id.*

To prevail in a premises liability case against a defendant governmental entity, the plaintiff must first demonstrate that there is "a dangerous or defective condition of any public building . . . owned and controlled by such governmental entity." Tenn. Code Ann. § 29-20-204(a). The determination of whether a particular condition is dangerous or defective is a question of fact. *Cornell*, 118 S.W.3d at 378. In making that determination, the fact-finder should consider whether the condition created a danger from which injury might be reasonably anticipated. *See Helton v. Knox Cnty., Tenn.*, 922 S.W.2d 877, 883 (Tenn. 1996). The mere fact that an injury is "possible" does not make the condition dangerous. *Id.* ("Probability, not possibility, governs; that it is 'possible' . . . does not make it dangerous.").

Once the existence of a dangerous condition has been established, the plaintiff must demonstrate that the governmental entity had notice of the condition. Tenn. Code Ann. § 29-20-204(b). This may be accomplished in one of two ways. First, the plaintiff may show that the condition was caused or created by the defendant or its agent, thereby imputing notice to the defendant. *See Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004); *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989). Second, if the condition was created by someone other than the defendant or its agent, the plaintiff may show that the defendant had actual or constructive notice of the condition prior to the accident. *Blair*, 130 S.W.3d at 764; *Sanders*, 783 S.W.2d at 951-52. Actual notice is defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Longmire v. The Kroger Co.*, 134 S.W.3d 186, 189 (Tenn. Ct. App. 2003) (quoting *Kirby v. Macon Co.*, 892 S.W.2d 403, 409 (Tenn. 1994)). Constructive notice is "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351 (Tenn. 2014). Constructive notice may be established through evidence that the condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of it. *Blair*, 130 S.W.3d at 764.

Ms. Miller testified that she was injured after slipping in water that was on the floor in the hallway of the Hospital. The Hospital did not present any evidence to refute Ms. Miller's testimony that there was water on the floor when she fell or that the water caused her to fall. It is common knowledge that water is not ordinarily found on the floor in hospital hallways. The Hospital does not argue otherwise.

However, the evidence does not establish that the Hospital caused or had actual or constructive notice of a dangerous condition.[3] Apart from the Hospital's stipulation that its employees were primarily responsible for moving the food cart, Ms. Miller's testimony was the only evidence presented to establish the Hospital's liability. Ms. Miller's testimony does not establish that the Hospital or its employees caused the water to be on the floor:

> [Q:] You don't know if any employee of the hospital had done anything to cause that leak; do you?
>
> [A:] No; I do not.
>
> [Q:] And you don't know if they failed to do anything that caused the leak; do you?
>
> [A:] (The witness shook her head.)
>
> [Q:] As we sit here today, you don't know what caused the leak or the water to come from the cart; is that right?
>
> [A:] No; I don't. Hum-um.
>
> . . .
>
> [Q:] You don't know if some visitor might have bumped into the cart and caused something to spill from the cart; do you?
>
> [A:] No.
>
> [Q:] And you don't know if someone who was passing by that cart may have spilled some liquid right there by the cart; do you?

---

[3] The trial court did not make a finding that the water on the floor was a dangerous or defective condition. Rather, it moved directly to find that the Hospital did not have actual or constructive notice. Ms. Miller does not raise this as an issue on appeal, and we therefore decline to address it.

[A:]  No[.]

[Q:]  But as we sit here today, you don't know how that water --

[A:]  No.

[Q:]  -- got in the floor; do you?

[A:]  Hum-um; no, sir.

Ms. Miller's testimony does not establish that the Hospital or its employees had actual notice of the water:

[Q:]  Do you know if any employee of the hospital knew that there was liquid in the floor before you fell?

[A:]  No.

[Q:]  Do you know if any person knew that there was liquid in the floor before you fell?

[A:]  No.

[Q:]  Do you know if anyone had reported that there was liquid in the floor before you fell?

[A:]  No; they all seemed surprised, you know.

[Q:]  And you don't know if anybody knew about that liquid being in the floor before you fell; do you?

[A:]  No, sir.

Likewise, Ms. Miller's testimony does not establish that constructive notice of the water should be imputed to the Hospital or its employees:

[Q:]  And I think you told me when I took your deposition, you don't know for sure if anybody actually witnessed your fall; is that right?

[A:]  Correct.

. . .

[Q:] And when you fell, you didn't see anybody around that cart --

[A:] No, sir.

[Q:] -- is that correct? You don't know how long that food cart had been in that location?

[A:] No, sir.

[Q:] I think you also said that the liquid that you slipped in, there was a trail of that to the cart --

[A:] Um-hum.

[Q:] -- is that correct?

[A:] Yes, sir

. . .

[Q:] You don't know if liquid had ever leaked from that cart previously; do you?

[A:] No.

[Q:] And you don't know if any liquid had ever leaked from any food cart at the hospital prior to that date.

[A:] No.

. . .

[Q:] You don't know if anyone had previously reported any leak from this cart; do you?

[A:] No, sir.

[Q:] Or from any cart -- any food cart at the hospital; right?

[A:]   No, sir.

. . .

[Q:]   Do you know how long the liquid had been in the floor?

[A:]   No, sir.

Though not cited specifically in her appellate brief, it appears that Ms. Miller attempts to cure the shortcomings of her evidence by relying on the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur permits a fact-finder to infer negligence from the circumstances surrounding an injury. *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. 1994). Rather than prove specific acts of negligence, a plaintiff relying on the doctrine of res ipsa loquitur must present evidence from which the fact-finder can conclude that the injury was caused, more probably than not, by the defendant's negligence. *Id.* at 426-27. Thus, it is based on everyday experience and requires nothing more than the common sense appraisal of the strength of the plaintiff's circumstantial evidence. *Id.* at 426. However, the strength of the plaintiff's evidence will vary with the facts of each case, and the strength of the inference of the defendant's negligence will likewise vary from reasonable probability to practical certainty. *Id.* at 427. As such, the doctrine of res ipsa loquitur does not apply when the plaintiff's injury could reasonably have occurred without the defendant's negligence. *Id.* The evidence supporting a res ipsa loquitur case must be strong enough to avoid requiring the fact-finder to make a leap of faith to find in favor of the plaintiff. *Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 527 (Tenn. Ct. App. 2002).

A plaintiff relying on the doctrine of res ipsa loquitur must demonstrate (1) what object or condition caused the injury, (2) that the object or condition that caused the injury is of a kind that does not ordinarily occur in the absence of negligence, and (3) that the instrumentality causing the injury was under the defendant's exclusive control when the injury occurred. *Id.* at 524. Once the plaintiff has presented evidence sufficient to establish an inference of negligence, the defendant may rebut the evidence by proving (1) it exercised reasonable care under the circumstances, (2) the plaintiff's injury was caused by something over which it had no control, (3) the plaintiff's injury was the sort of injury that commonly occurs without anyone's negligence, or (4) that the plaintiff's injury could not have been avoided even with reasonable care. *Id.* at 527. It is then the fact-finder's job to weigh the evidence and determine whether the defendant has successfully rebutted the inference of negligence arising from the plaintiff's evidence. *Id.* at 527-28.

Ms. Miller cites *Benson v. H.G. Hill, Inc.*, 699 S.W.2d 560 (Tenn. Ct. App. 1985), in support of her contention that the evidence presented was sufficient to create a

reasonable inference that the Hospital's negligence caused her injury. In *Benson*, the plaintiff suffered an injury when she slipped and fell on wet floor wax in the defendant's grocery store. *Id.* at 561. The trial court granted a directed verdict in favor of the defendant grocery store, concluding that the plaintiff's evidence failed to establish that the grocery store caused or had notice of the dangerous condition. *Id.* at 561-62. This Court reversed on appeal, holding that a reasonable jury could infer that the grocery store caused the dangerous condition because it is common knowledge that grocery store employees regularly apply wet wax to the floors of grocery stores for maintenance purposes and because there was no other reasonable explanation for the presence of the wet wax on a grocery store floor. *Id.* at 563-64.

This case is distinguishable from *Benson* in several respects. Most notably, *Benson* involved the grant of a directed verdict to the defendant. A directed verdict is only appropriate when the court determines that the evidence is susceptible to only one conclusion. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 281 (Tenn. 2005). In ruling on a motion for directed verdict, the court does not weigh the evidence or evaluate the credibility of the witnesses. *Burton*, 129 S.W.3d at 520. Rather, it must view the evidence in the light most favorable to the non-moving party, give the non-moving party the benefit of all reasonable inferences, and disregard all evidence contrary to the non-moving party's position. *Id.* Conversely, when the trial court weighs the evidence and determines the credibility of the witnesses in a bench trial, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *See C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 272 (Tenn. Ct. App. 2007). Because this case was resolved after a bench trial rather than on a motion for a directed verdict, a less stringent standard of review applies. As we explained above, we are bound to leave the trial court's findings of fact undisturbed unless the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Nashville Ford Tractor, Inc.*, 194 S.W.3d at 425.

This case is also factually distinguishable from *Benson*. In *Benson*, this Court held the grocery store's negligence could reasonably be inferred because it is common knowledge that grocery store employees regularly apply wet wax to their floors and because there was no other reasonable explanation for the presence of the wet wax on the floor. *Benson*, 699 S.W.2d at 563-64. The same cannot be said of the water on the Hospital's floor in this case. While it is possible that the water was leaking from the food cart as a result of the Hospital's negligence, the evidence presented does not foreclose other reasonable explanations for the water's presence on the floor. As Ms. Miller acknowledged in her testimony, there are at least two plausible explanations for the water's presence apart from the Hospital's negligence. Another visitor could have bumped the food cart and caused water to spill from the food cart. It is also possible that a visitor spilled water near the food cart. Because the injury could reasonably have

occurred without the Hospital's negligence, Ms. Miller's evidence was not sufficient to create a reasonable inference that her injury was caused, more probably than not, by the Hospital's negligence.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant, Valerie Miller, and her surety, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE