IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 2, 2023 Session

## SHANIRA LEE TANKARD v. BENJAMIN LEE TANKARD, II

**Appeal from the Chancery Court for Rutherford County**
No. 18CV-1369     Darrell Scarlett, Chancellor

_____

## No. M2022-00498-COA-R3-CV

_____

A mother relocated out-of-state with her children and filed a petition to modify the existing parenting plan. The father filed a competing petition for modification. The trial court found a material change in circumstances warranting modification of the parenting plan. It crafted two modified parenting plans: one which would take effect if the mother remained out-of-state and the other which would take effect if she returned to Tennessee. The mother returned and now argues the parenting plan should not have been modified. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and JEFFREY USMAN, JJ., joined.

Justin P. Morgan and Michael R. Giaimo, Cookeville, Tennessee, for the appellant, Shanira Lee Tankard.

Tillman W. Payne, Nashville, Tennessee, for the appellee, Benjamin Lee Tankard, II.

### OPINION

### I.

### A.

Shanira Tankard ("Mother") and Benjamin Tankard, II ("Father") divorced in October 2019. In the final divorce decree, the Rutherford County Chancery Court adopted and incorporated an agreed permanent parenting plan for their two minor children. *See*

Tenn. Code Ann. § 36-6-404(a) (2021). The parenting plan named Mother primary residential parent and gave her 209 parenting days while Father received 156 parenting days.

Without notifying Father, Mother moved to Connecticut with the children in August 2020. *See id.* § 36-6-108(a) (2021) (requiring notice to the nonrelocating parent no less than sixty days before a move "unless excused by the court for exigent circumstances"). Months later, she petitioned to modify the parenting plan. She alleged that a material change in circumstances existed due to Father physically assaulting her and then threatening her, causing her to "flee" to her family in Connecticut. She asked the court to "modify the parenting plan to a schedule . . . which allows Mother to be the primary residential parent from . . . Connecticut and grants parenting time to Father." Under Mother's proposed parenting plan, the children would reside with Mother 296 days per year. Father's residential parenting time would be reduced to 69 days.

Father responded with a counter-petition to modify the parenting plan and a petition for civil contempt.[1] Father complained he had been unable to exercise his allotted parenting time since Mother moved. He proposed a modification to the parenting plan that would return the children to Tennessee, name him primary residential parent, and increase his residential parenting time to 309 days.

By the time of trial, the children were six and four years old. They had been living in Connecticut with Mother for almost a year and a half. The children had very little contact with Father after the move. At Mother's request, a Connecticut court issued an ex parte temporary restraining order against Father. The restraining order remained in effect from August to October 2020. After a hearing, the Connecticut court dismissed Mother's application for an order of protection and the temporary restraining order for lack of jurisdiction. Yet Mother continued to deny Father his residential parenting time. And until March 2021, she only allowed him sporadic phone contact.[2]

Mother claimed that she relocated to Connecticut because she feared for her safety. She told the court that Father physically attacked her in April 2020. As Mother described it, a heated argument arose when she delivered the children to Father's house. When she tried to leave for work, Father took her car keys. The argument escalated, and, during the ensuing struggle, Mother was seriously injured. Mother claimed Father grabbed her from behind and slammed her to the ground. Father confirmed that a physical altercation

---

[1] The court dismissed Father's petition for civil contempt after the final hearing because Mother's violations of the parenting plan were incapable of being purged.

[2] By agreed order, Father was granted a few weeks of visitation with the children in June and December 2021.

2

occurred. But he insisted that Mother was the initial aggressor, and her injuries were accidental.

Despite her injuries, Mother did not immediately report the incident to the police or seek judicial relief. For the next few months, the parents voluntarily implemented a week on/week off residential parenting schedule. But in August, Father texted Mother, "Lol I guess you ain't learned from being knocked down before uhhh?" Mother testified that she believed Father was threatening her. Father acknowledged that his message could be seen as threatening. But he claimed that he did not intend any actual harm. Shortly after she received Father's message, Mother moved with the children to her mother's home in Connecticut.

Mother wanted the children to remain with her in Connecticut. She had extended family in the area. And she had secured stable employment and her own apartment. In her view, the children were thriving in their current environment.

Father wanted Mother and the children to return to Tennessee and comply with the current parenting plan. Father's family was in Tennessee. Father, his biological parents, and his stepmother testified that Mother and Father were both capable and loving parents that should remain involved in their children's lives. But if Mother refused to return, Father asked the court to award him primary custody of the children.

B.

The trial court found that a material change had occurred since the entry of the current plan. Several facts informed the court's finding. The parties were not following the current plan. And Father had been unable to exercise his allotted parenting time for well over a year. Due to the geographical distance between the parents' residences, the current plan was unworkable.

The court also found that modification of the existing plan was in the children's best interest. Both parents had a good relationship with their children and the ability to parent them. And the children, due to their young ages, needed both parents to be involved in their lives to the maximum extent possible. Although most of the relevant factors weighed equally between the parties, one factor slightly favored Mother while another strongly favored Father. Mother was the children's primary caregiver under the current plan. But her conduct since August 2020 demonstrated her unwillingness to encourage a good relationship between Father and the children. She "thwart[ed] Father's substantial efforts to see his children."

Out of an abundance of caution, the court also stated how it would have ruled if it had considered the parties' petitions under the relocation statute. In the court's view, the geographic distance between the parents would be detrimental for the children because

both parents could not be sufficiently involved in their lives. The court also found that Mother chose to relocate to be near her family, not because she feared for her safety. For these reasons, the court would have denied Mother's relocation had she requested it. *See* Tenn. Code Ann. § 36-6-108(b).

The court designated Father the primary residential parent and crafted two modified parenting plans, depending on whether Mother chose to remain in Connecticut or return to Tennessee. If Mother returned to Tennessee, the court determined that it was in the children's best interest for the parents to have equal parenting time. After Mother's timely return to Tennessee, the court entered the appropriate modified plan.

## II.

On appeal, Mother insists that the court treated her modification petition as a request for approval of her relocation. Viewed through that lens, she argues that the court erred as a matter of law when it modified the existing plan after she chose to return to Tennessee. Given her return to Tennessee and the proof at trial, she also questions the court's material change and best interest findings.

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the trial court's conclusions of law de novo with no presumption of correctness. *Id.* at 692.

### A.

Mother's argument in support of her first issue reflects a fundamental misconception of the court's ruling. She insists that the trial court "considered the parties' respective petitions to modify under the relocation statute." *See Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 371 (Tenn. 2011) ("When appropriate, the courts should give effect to the substance of a pleading rather than its form."). So the court was not authorized to modify the parenting plan unless she chose to remain in Connecticut after it denied her relocation request. *See* Tenn. Code Ann. § 36-6-108(c)(4) ("If the court finds that relocation is not in the best interest of the minor child, the court shall deny the petition for approval and, utilizing the factors provided in § 36-6-106(a), enter a modified permanent parenting plan that shall become effective only if the parent proposing to relocate elects to do so despite the court's decision denying the parent's petition for approval.").

But the court did not treat Mother's filing as a petition seeking approval of a relocation. In its final order, the court expressly stated that it applied "the legal standard for modifying a parenting plan." The court's subsequent discussion of "how it would have

4

ruled" if it had applied the parental relocation statute was not an alternative holding. It did not affect the court's final judgment.

We find no abuse of discretion in the court's decision to analyze Mother's petition as a request to modify the permanent parenting plan. Trial courts have discretion to treat pleadings "according to the relief sought." *Norton v. Everhart*, 895 S.W.2d 317, 319 (Tenn. 1995). Here, Mother never asked for permission to relocate. She asked the court to modify the parenting plan schedule given the changed circumstances. So Mother's arguments based on application of the parental relocation statute must fail.

B.

Mother also contends that the evidence preponderates against the court's material change and best interest findings. Tennessee courts apply a two-step analysis when asked to modify a permanent parenting plan. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 496 (Tenn. 2017); *Brunetz v. Brunetz*, 573 S.W.3d 173, 179 (Tenn. Ct. App. 2018). The threshold issue is whether a material change in circumstances has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C) (Supp. 2020). If a material change has occurred, the court must then determine whether modifying the parenting plan is in the child's best interest by examining the statutory best interest factors. *Brunetz*, 573 S.W.3d at 179; Tenn. Code Ann. § 36-6-106(a) (2017).

1. Material Change in Circumstance

In the context of a modification of custody, also known as a change in the primary residential parent, a material change in circumstance may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). Not every change in circumstance is a material change; "[t]he change must be 'significant' before it will be considered material." *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007).

But when the issue before the court is a modification of the residential parenting schedule, the threshold for a material change of circumstances is low: "merely showing that the existing arrangement [is] unworkable for the parties is sufficient." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006). Thus, for modification of a residential parenting schedule, a material change of circumstance may include, but is not limited to, "failure to adhere to the parenting plan" or "circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C).

5

The "determination[ ] of whether a material change in circumstances has occurred" is a question of fact. *Armbrister*, 414 S.W.3d at 692. As in every primary residential parent or parenting time determination, the child's needs are paramount; the desires and behaviors of the parents are secondary. *In re T.C.D.*, 261 S.W.3d at 742.

Both Mother and Father argued at trial that a material change had occurred since the entry of the current plan. The trial court agreed. The court found that the parties were not adhering to the current plan. Mother had moved to Connecticut and refused to allow Father to exercise his allotted parenting time. Given the geographical distance between the parents, the current plan was no longer workable.

Mother now argues that no material change in circumstance existed after her return to Tennessee. But the evidence does not preponderate against the court's finding. Mother's subsequent return to Tennessee removed a geographic obstacle, but her conduct demonstrated her unwillingness to foster a good relationship between Father and the children.

2. Best Interest Analysis

The trial court also found that, if Mother returned to Tennessee, a modified plan designating Father as the primary residential parent and providing for equal parenting time was in the children's best interests. Mother contends that the court's ruling was contrary to Father's expressed desire to reinstate the existing plan. Even so, absent an agreement between the parties, "[t]he trial court itself must determine whether modification is in the child's best interest." *Lawson v. Stewart*, No. M2016-02213-COA-R3-CV, 2017 WL 4331043, at *4 (Tenn. Ct. App. Sept. 28, 2017) (citing *Stricklin v. Stricklin*, 490 S.W.3d 8, 18 (Tenn. Ct. App. 2015)); Tenn. Code Ann. § 36-6-101(a)(5) (providing that the "court is not required to . . . make an independent determination as to whether the modification is in the best interest of the child" if the parties agree to the terms of a modified parenting plan).

Mother also contends that the court's ruling "is not well grounded upon the statutory factors." We disagree. In the court's view, the children needed the involvement of both parents "to the maximum extent possible." Tenn. Code Ann. § 36-6-106(a)(7). Mother and Father were both "good, active, and involved parents." *Id.* § 36-6-106(a)(1), (4). Although Mother was the children's primary caregiver, the court did not place much weight on that factor. *Id.* § 36-6-106(a)(5). The court attached more weight to the differences in the two parents' "willingness and ability . . . to facilitate and encourage a close and continuing parent-child relationship between the child[ren] and both of the child[ren]'s parents." *Id.* § 36-6-106(a)(2). For well over a year, Mother thwarted Father's efforts to spend time with his children. She even limited his phone contact.

The best interest analysis is particularly "fact-intensive." *Grissom v. Grissom*, 586 S.W.3d 387, 394 (Tenn. Ct. App. 2019). These decisions "often hinge on subtle factors, including the parents' demeanor and credibility during the . . . proceedings." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The record indicates that Mother and Father are both good parents. And the trial court had the difficult task of determining which parent was comparatively more fit based on the evidence presented. The court applied the correct law, the factual basis for the decision is properly supported, and the decision is within the range of acceptable alternative dispositions. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## III.

The trial court did not err in analyzing this case under the parenting plan modification statute rather than the parental relocation statute. And the record supports its finding that there was a material change in circumstance sufficient to modify the parenting plan and that modification was in the children's best interest. So we affirm.

           ___s/ W. Neal McBrayer_____
           W. NEAL MCBRAYER, JUDGE