# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
August 12, 2015 Session

## DANA JO STRICKLIN v. JERONE TRENT STRICKLIN

**Appeal from the General Sessions Court for Hardin County**
**No. 2009CV7182     Daniel L. Smith, Judge**

_____

**No. W2015-00538-COA-R3-CV – Filed September 21, 2015**
_____

This appeal stems from a post-divorce modification proceeding that was commenced by Mother in order to modify the parties' permanent parenting schedule. Following a recess at trial, the parties announced that they had agreed to the terms of a new parenting plan. The agreed-upon terms were announced by the parties' counsel in the presence of the parties in open court. Following the entry of the order approving the modified parenting plan, Father stated that he did not consent to the parenting plan and moved to set the trial court's order aside. The trial court denied his motion. Because the trial court's order does not contain a finding that the modified parenting plan is in the child's best interests, we vacate and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

James Y. Ross, Waynesboro, Tennessee, for the appellant, Jerone Trent Stricklin.

Jennifer King and Jay Dustin King, Jackson, Tennessee, for the appellee, Dana Jo Stricklin.

## OPINION

### Background and Procedural History

Dana Jo Stricklin ("Mother") and Jerone Trent Stricklin ("Father") were married on July 12, 1997, in Hardin County, Tennessee. In September of 2009, after more than 12 years of marriage, Mother filed a "Complaint for Divorce" in the General Sessions Court of Hardin County. The parties were ultimately divorced pursuant to a final decree of divorce entered on December 14, 2009. The final decree entered by the trial court incorporated a marital dissolution agreement and also approved a permanent parenting plan concerning the minor child born of the marriage. The permanent parenting plan allocated Mother 215 days of parenting time per year and provided that Father would exercise parenting time with the child "on all of his days off."

On November 18, 2013, Mother filed a "Motion to Modify Permanent Parenting Plan and Child Support." Therein, Mother alleged that a modification of the current parenting plan was justified and also requested that the court grant an increase in Father's child support obligation. A hearing on these issues was scheduled for April 21, 2014.

At the beginning of the April 21 hearing, the trial court heard proof from Mother, who testified in support of her request to modify the parenting schedule. After a recess, however, counsel for Mother, in the presence of the parties, announced to the court that the parties had agreed to enter a new parenting plan that would amend the previous order of the court. Mother's counsel explained that Mother would remain the primary residential parent under the modified plan, but noted that Father's parenting time would be specifically designated. Mother's counsel then proceeded to outline the various provisions that the parties had agreed on with regards to parenting time. Following this lengthy recitation and overview, counsel for Father stated that he was in agreement with the announcement.

Subsequent to the parties' announcement, the trial court heard arguments on three separate issues that remained unresolved from the announced agreement. These issues, which are not the subject of litigation in this appeal, included, *inter alia*, inquiry into whether Father would be liable for retroactive child support. After making oral rulings on these issues, the trial judge concluded the hearing and remarked orally that he was glad the parties had been able to work out their dispute "for the best interest of the child."

On June 3, 2014, the trial court entered an "Order for Modification of Permanent Parenting Plan." In addition to memorializing the oral rulings made at the April 21 hearing, the trial court's June 3 order concluded that an increase in Father's child support obligation was not justified. As is relevant to this appeal, the June 3 order also adopted a

parenting plan containing the provisions that were discussed in detail as part of the April 21 announcement. The parenting plan was not signed by either party.[1]

On June 25, 2014, Father filed a motion seeking to alter or amend or otherwise vacate the June 3 order. The motion, filed by Father's newly retained counsel, purported to describe events that occurred in connection with the April 21 hearing. According to the motion, Father's previous counsel had informed him that if he did not agree to modify the parties' parenting plan, the trial court would do it at the conclusion of the April 21 hearing. Father claimed that both prior to and subsequent to the announced agreement, he informed his attorney that "he was not happy with, and/or did not agree with, the terms and provision[s] of the parenting plan as modified." He further observed that the June 3 order failed to find that a change of circumstances had occurred or that the adopted parenting plan was in the best interest of the minor child. Following a hearing on Father's motion, the trial court denied it by order entered on November 17, 2014. This appeal ensued.

## Issues Presented

In his brief, Father raises two issues for our review, which we have condensed and re-stated as follows:

1. Whether the decision of the trial court should be reversed because the modification proceeding was initiated by a motion instead of a petition.

2. Whether the trial court erred by not vacating the entered modified parenting plan.

## Standard of Review

On appeal, we review the trial court's findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review the trial court's resolution on a question of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

The purpose of a motion to alter or amend a judgment "is to provide the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005) (citation omitted). "The motion should be granted when the controlling law changes before the judgment becomes final; when

---

[1]To this end, we agree with Father that the trial court erred in stating that the parenting plan was executed by both parties.

3

previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.* (citation omitted). On appeal, we review a trial court's decision regarding a motion to alter or amend a judgment under an abuse of discretion standard. *Id.* (citation omitted).

## Discussion

We first address Father's argument that the trial court's decision should be reversed due to the fact that the modification proceeding was initiated by a "motion" rather than a petition. At the outset, we note that we do not disagree with Father that the applicable statute appears to contemplate the filing of a petition for modification as opposed to a motion. In part, Tennessee Code Annotated section 36-6-405(a) states as follows: "In a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the **petition** for modification and with the response to the **petition** for modification." Tenn. Code Ann. § 36-6-405(a) (2014) (emphasis added). As the Tennessee Supreme Court previously observed, "[this statute] appears to require the filing of a petition for modification rather than a motion as the initial pleading." *Armbrister v. Armbrister*, 414 S.W.3d 685, 688 n.4 (Tenn. 2013).

In his brief, Father suggests that because Mother simply filed a "motion" to modify the parenting plan, this prevented the trial court from properly assuming jurisdiction over the modification proceeding. In advancing the importance of filing a petition as opposed to a motion, Father argues that the "petition" required under the statute should be treated as synonymous with a "complaint" for the purposes of Rule 3 of the Tennessee Rules of Civil Procedure. Immediately after making this argument in his brief, Father outlines a number of procedural rules that are implicated upon the filing a complaint pursuant to Rule 3. For example, Father notes that under Rule 4 of the Tennessee Rules of Civil Procedure, the filing of the complaint triggers the clerk's responsibility to issue a summons for service of process.

The simple fact that Mother styled her pleading as a motion instead of a petition is not of ultimate consequence. "When appropriate, the courts should give effect to the substance of a pleading rather than its form." *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 371 (Tenn. 2011) (citation omitted). Designating her pleading as a motion instead of a petition did not detract from the substance of the aims Mother sought to achieve through her post-divorce filing. We fail to see how the erroneous styling of Mother's pleading, by itself, prevented the trial court from assuming jurisdiction over the modification proceeding.

Further, although we agree that the petition referred to in Tennessee Code Annotated section 36-6-405(a) should be treated as a "complaint" for the purposes of the

Tennessee Rules of Civil Procedure,[2] we observe that Father's brief does not actually state that he was denied any of the procedural rights that follow the filing of a complaint under Rule 3. Indeed, although Father notes that the service of a summons is required under Rule 4, nowhere does Father specifically assert that he was denied service of process with regard to Mother's motion to modify. More importantly, we observe that Father never raised *any* issues regarding his procedural rights in the trial court. To the extent that he even attempts to do so implicitly on appeal, we note that these issues are waived. *See Johnston v. Houston*, 170 S.W.3d 573, 578 (Tenn. Ct. App. 2004) (citation omitted) ("Tennessee law is clear that an issue not raised in the trial court may not be raised for the first time on appeal."). We accordingly find no error with respect to Father's first raised concern.

Father's second issue on appeal specifically challenges the validity of the trial court's June 3, 2014 order. In his brief, he argues that the June 3 order should have been set aside following the filing of his June 25, 2014 motion to alter or amend or vacate.[3] In support of this argument, Father cites a host of statutes and procedural rules, some of which are clearly not relevant to the facts of this case.[4] In general terms, Father challenges the trial court's modification order on two fronts. First, he alleges that his consent to the parenting plan was never demonstrated. Second, he alleges that the trial court's order lacks appropriate findings of fact and conclusions of law.

With regard to the consent issue, we disagree with Father that he did not consent to the terms of the agreement that were announced in open court. At the April 21 hearing, at which both Mother and Father were present, Mother's counsel announced in

---

[2] Under Rule 3 of the Tennessee Rules of Civil Procedure, "[a]ll civil actions are commenced by filing a complaint." Tenn. R. Civ. P. 3. As was explained in a 2013 Advisory Commission Comment to Rule 3, "[d]epending on the nature of a statutorily authorized 'petition,' the petition might be considered a 'complaint' for purposes of [the rules of procedure], or it might be considered a motion relating to a pending civil action." In light of the nature of modification proceedings under Tennessee Code Annotated section 36-6-405, we conclude that the commencement of proceedings under that section should be treated as the filing of an independent action.

[3] When Father filed his June 25, 2014 motion to alter or amend or vacate, he requested relief pursuant to Tennessee Rules of Civil Procedure 59 and 60. Because his motion was filed within thirty days from the entry of the June 3 order, we regard his motion as a request for relief under Rule 59. *See Campbell v. Archer*, 555 S.W.2d 110, 112 (Tenn. 1977) ("The function of [Rule 60] is to give relief from final judgments; Rule 59 . . . is the appropriate remedy for asserting alleged errors affecting a judgment which has not yet become final.").

[4] For example, at one point, Father's brief cites to Tennessee Code Annotated section 36-6-406(a). In part, that statute provides that a parenting plan shall not utilize dispute resolution if the court determines that a parent has engaged in (1) willful abandonment that continues for an extended period of time or (2) physical or sexual abuse or a pattern of emotional abuse of a parent, child, or of another person living with the child. Tenn. Code Ann. § 36-6-406(a) (2014). Although Father cites to this statute, he does not explain why it is relevant, nor are there any facts in the record which compel us to find that it is.

5

open court and in the presence of the parties that the parties had reached an agreement as to the parenting issues between them. Importantly, we observe that this announcement was not made in general terms. Rather, subsequent to her initial announcement that an agreement had been reached, Mother's counsel went on to outline in detail the various provisions upon which the parties had agreed. These provisions were announced on the record before a court reporter, and at the end of Mother's counsel's recitation, Father's counsel stated that he was in agreement with the terms of the agreement as stated in the announcement. At no point during the hearing did Father voice any objection to the terms presented. Indeed, by way of counsel, he expressly provided his assent to the terms of the agreement. Father did not attempt to express any personal dissatisfaction with the announcement until several weeks after the trial court entered its June 3 order.

Even assuming Father had repudiated the announced agreement before its terms were memorialized in the June 3 order, however, we conclude that the agreement could still be enforced upon the trial court's approval of it. Thus, even assuming the trial court had construed Father's failure to sign the entered parenting plan as affirmative evidence that he had repudiated the agreement, this would not have prevented the trial court from otherwise enforcing the agreement upon finding that the agreement was in the child's best interests. In *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987), the Tennessee Supreme Court quoted the general rule outlined in *Corpus Juris Secundum* applicable to the entry of consent judgments:

> The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.

*Id.* at 599 (quoting 49 C.J.S. *Judgments* § 174(b)). In a number of decisions entered post-*Harbour*, this Court has construed this language to indicate that consent of the parties is not required at the time of the entry of judgment "if the parties' agreement previously existed 'at the time the agreement received the sanction of the court.'" *See, e.g.*, *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 536-37 (Tenn. Ct. App. 2000). However, in order for a prior oral agreement to be enforceable under this exception, the agreement "must have been made 'in open court' or in a 'hearing' wherein the fact and the terms of the agreement were determined." *Id.* at 537. Moreover, "[t]he terms of the agreement must also be reflected in the record." *Id.*

In this case, there is no disputing that the parties agreed to a modified parenting plan and that the material terms were announced in open court. The terms were recited in detail by Mother's counsel and are preserved by a certified transcript of the proceedings. Father never voiced any opposition to the terms of the agreement, but instead, he consented to their adoption through his counsel. Moreover, we note that the agreement was sanctioned by the trial court following the parties' announcement. In his closing comments at the April 21 hearing, the trial judge stated, "I'm glad that y'all were able to

6

work this out for the best interest of the child." Again, even if the trial court assumed Father had withdrawn his consent to the agreement by the time it entered the June 3 order, nothing prevented the trial court from enforcing the agreement upon confirming that it was in the child's best interests. *See Nesbitt v. Nesbitt*, No. M2006-02645-COA-R3-CV, 2009 WL 112538, at *6 (Tenn. Ct. App. Jan. 14, 2009) (concluding that Wife was prevented from withdrawing her consent to agreed-upon parenting plan after the plan was "read in detail to the court," was accepted by the court, and the details of the parenting plan "were preserved by a transcript of the proceeding").[5]

In short, we find no error in the trial court's decision to enter the June 3 order. The parenting plan adopted by the court's order contained the terms that previously had been announced in detail before the court. Contrary to Father's arguments, there was not an absence of consent.[6] His attempt to repudiate the agreement post-judgment does not invalidate the consent that was previously established before the trial court.

Although the trial court did not err in entering its June 3 order based upon the announced agreement from the April 21 hearing, the question remains whether its June 3 order is legally sufficient. In his brief, Father challenges the validity of the order due to the trial court's failure to make findings on (1) whether the parties knowingly and voluntarily consented to the terms of the announced agreement, (2) whether or not a material change of circumstance existed for the announced modification, and (3) whether or not the announced modification was in the best interests of the child. According to Father, the lack of specific findings on these topics gives cause for vacating the modification order.

With respect to the first two concerns, we find no error on the part of the trial court. Although Father suggests that the June 3 order ran afoul of Tennessee Code Annotated section 36-6-407(a) by failing to find that the parties' agreement was

---

[5] We acknowledge that in *Nesbitt*, the agreed-upon parenting plan was apparently signed by the parties prior to the announcement that an agreement had been reached. *Nesbitt*, 2009 WL 112538, at *6. Although the modified parenting plan was not signed at any point by the parties in the case at bar, we fail to see how this fact distinguishes this case from the principle articulated in *Nesbitt*. What remains important in light of the *Environmental Abatement* case is that an agreement was announced in open court, the terms of the agreement were read in detail to the court, and the details of the agreement were preserved by a transcript of the proceeding. The parenting plan ultimately adopted by the trial court's June 3 order contains all of the substantive provisions announced at the April 21 hearing.

[6] At one point in his brief, Father argues that the June 3 order is deficient under Tennessee Code Annotated section 36-6-101(a)(3)(C) because the attached parenting plan does not "contain the notarized signature of both parties." Tenn. Code Ann. § 36-6-101(a)(3)(C) (2014). We note that this statute was not in effect when this case was filed or at the time of trial. Tennessee Code Annotated section 36-6-101(a)(3)(C) did not go into effect until July 1, 2014. To the extent Father specifically relies upon this statute to attack the validity of the June 3 order, his argument is without merit.

"knowing and voluntary,"[7] we reject his contention. As we have already explained, the parties' consent to the terms of the modified parenting arrangement was readily established at the April 21 hearing. Both parties were present at the hearing, and no objection of any kind was voiced with respect to the announced agreement. Moreover, we disagree with Father that the trial court's June 3 order fails to reference the knowing and voluntary nature of the parties' agreement. In incorporating the modified parenting plan at issue, the trial court's order specifically states that "the parties heard the announcement of the attorneys in open Court before the Court of their agreement as to the terms of the Permanent Parenting Plan which shall be attached as Exhibit A and incorporated by reference and made a part of this Order."

Concerning the lack of a finding pertaining to a "material change of circumstance," we do not believe the absence of such a finding invalidates the trial court's modification order. Although "the threshold inquiry for a trial court faced with a petition to modify . . . is whether a material change in circumstance has occurred," *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007) (citations omitted), we are of the opinion that such an inquiry is not required when parties agree to modify a parenting plan. As such, we do not find the language in Tennessee Code Annotated section 36-6-101(a)(2)(C) to be controlling. Pursuant to that statute, parties seeking to modify a court's prior decree pertaining to a residential parenting schedule "must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C) (2014). As we interpret it, the statute only requires proof of a material change of circumstance in instances where the petition to modify the residential schedule is contested. Indeed, we note that the larger statutory scheme in Title 36 of the Tennessee Code appears to endorse the ability of courts to approve modifications to parenting arrangements without the necessity of proving a change in circumstance. For example, under Tennessee Code Annotated section 36-6-404(c), courts are directed to approve a permanent parenting plan agreed to by the parties "[w]ith a consent order to modify a final decree or judgment involving a minor child." Tenn. Code Ann. § 36-6-404(c) (2014).

Our opinion on this issue, however, should not be construed as negating the importance of proving a material change of circumstance in contested cases. As we recently discussed in *Canada v. Canada*, No. W2014-02005-COA-R3-CV, 2015 WL 5178839 (Tenn. Ct. App. Sept. 4, 2015):

> The concept of requiring a parent seeking modification to prove a material change in circumstances originated out of this Court's recognition that

---

[7] In part, Tennessee Code Annotated section 36-6-407(a) provides that trial courts "shall approve agreements of the parties allocating parenting responsibilities" if it finds that the agreement is "knowing and voluntary." Tenn. Code Ann. § 36-6-407(a)(2) (2014). In this case, the parties' announced agreement included representations that Mother and Father would exercise joint decision-making authority for the child.

existing parenting orders are considered *res judicata* on the facts as they existed at the time the most recent order was entered. In that regard, the requirement "promotes finality, 'prevents inconsistent or contradictory judgments, conserves judicial resources, and protects litigants from the cost and vexation of multiple lawsuits.'" It would be a great inconvenience to the litigants, the courts, and the public, if either party, as often as he or she chose, could re-litigate questions of custody or support on the same or substantially similar facts. Additionally, the requirement serves the courts' interests in preserving stable custodial relationships for the child and discouraging divorced parents from using the child as a pawn in their ongoing conflicts through repeated petitions to modify custody.

*Id.* at \*6 (internal citations omitted). Suffice it to say, these types of considerations are not present when parties are able to reach a mutual agreement on parenting issues. Given the consent manifested by the parties in this case to modify the existing parenting arrangement, we find no error in the absence of a finding concerning a "material change of circumstance."

In practical terms, we note that requiring the trial court to make such a finding would negatively impact the utility of reaching an agreement as to parenting issues. Because a finding of a "material change of circumstance" must be supported by competent proof, it cannot be made unless parties formally present that proof before the trial court. We see no reason why parents who have agreed to modify a parenting arrangement must be forced to spend time and attorneys' fees in an attempt to prove a "material change of circumstance." In the same vein, requiring such proof would be a burden to judicial economy and efficiency. When parties have agreed that a change to the existing parenting arrangement is necessary, trial courts should not be required to spend judicial resources in addressing the question of whether a "material change of circumstance" has actually occurred.

Of course, we do not intend to suggest that the trial court should have no involvement when parties reach an agreement as to parenting issues. Indeed, we agree with Father that the June 3 order fails to include appropriate findings regarding the child's best interests. Although parties may certainly reach an agreement to modify an existing parenting arrangement, they cannot bind courts to approve agreements affecting a child's best interests. This principle was discussed in detail by the Tennessee Supreme Court's decision in *Tuetken v. Tuetken*, 320 S.W.3d 262 (Tenn. 2010). *Tuetken* involved a post-divorce parenting dispute in which both parties agreed that a parenting arbitrator would have authority to make decisions regarding the best interests of their children. *Id.* at 264. After the father in *Tuetken* objected to one of the decisions made by the agreed-upon parenting arbitrator, the trial court modified the arbitrator's ruling. *Id.* at 265-66. Mother then filed an appeal and argued that the trial court had applied an incorrect standard of review when it chose to modify the arbitrator's decision. *Id.* at 266.

Although this Court affirmed the trial court's ruling when we reviewed the matter, our Supreme Court subsequently granted permission to appeal. On appeal, the Supreme Court exercised its supervisory role and specifically considered "whether Tennessee law permits parties to submit to arbitration issues that implicate the trial court's duty to ensure that the best interests of children are protected." *Id.* at 271.

In addressing this question, the *Tuetken* court observed that the "Tennessee statutes, taken together, impose a duty on trial courts to protect the best interests of children."[8] *Id.* It ultimately concluded that "parents cannot bind the court with an agreement affecting the best interest of their children," and as such, it held that "parties may not submit parenting issues to binding arbitration." *Id.* at 272. Since the opinion in *Tuetken* was filed, this Court has had the chance to apply its guidance on a number of occasions. Of particular note, for example, is *Fletcher v. Fletcher*, No. M2010-01777-COA-R3-CV, 2011 WL 4447903 (Tenn. Ct. App. Sept. 26, 2011). The *Fletcher* case involved a post-divorce custody dispute that arose when the mother in that case filed a petition to modify the parties' existing custody order. *Fletcher*, 2011 WL 4447903, at *2. Prior to a trial on the mother's petition, the parties participated in mediation. *Id.* After the mediation proved successful, the father filed a motion to enforce the parenting plan on which the parties had agreed. *Id.* The mother in *Fletcher*, who had repudiated the agreement following mediation, contended that it was not in the children's best interests. *Id.* She urged the trial court to set the mediated parenting plan aside and hold a hearing in which the children would be permitted to testify concerning their custodial preference. *Id.* After holding a hearing on Father's motion to enforce, the trial court granted his motion. In its order, the trial court reasoned as follows:

> The Court finds that the Parenting Plan form is sufficient to find a contract. The proof at the hearing was the parties' intent was to resolve all issues raised by the case. Counsel represented both parties and the mediator signed off on the agreement along with both parties. Clearly there was a meeting of the minds to resolve the issues. Secondly the Court finds

---

[8] Among the statutes cited by the *Tuteken* court was Tennessee Code Annotated section 36-6-106(a). This statute provides that in any proceeding requiring the court to make a custody determination regarding a minor child, "the determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a) (2014). In its opinion, the *Tuetken* court noted that the trial court's duty to protect a child's best interests "comport[ed] with the longstanding notion that the state stands in *parens patriae* of the minor children within its borders." *Tuetken*, 320 S.W.3d at 271. In quoting language from a prior 1918 decision, the Supreme Court noted that it had previously described the State's rights over children as follows: "[T]he state has a right 'paramount to any parental or other claim, to dispose of such children as their best interests require. The legal rights of a parent are very gravely considered, but are not enforced to the disadvantage of the child.'" *Id.* (quoting *State v. West*, 201 S.W. 743, 744 (Tenn. 1918)).

that implicit in this mediation agreement is the understanding that it was proposed in good faith and in the best interest of the minor children. A review of the history of the parties' specific circumstances and the past and present circumstances of the minor children, (as gleaned from the Court file, the pleadings and from argument of counsel) the Court finds the mediation agreement is in the best interest of the minor children.

*Id.* at *4.

In reviewing the case on appeal, we concluded that the trial court erred in applying a contract analysis to the mediated parenting plan at issue. *Id.* at *8. We stressed that that the trial judge should not be supplanted as "the ultimate arbiter of the best interest of the children," and observed that the trial judge appeared to have delegated the best interest determination to the parties' lawyers. *Id.* Although we acknowledged that the trial court's order contained a finding that the parenting plan was in the best interest of the children, we concluded that the record did not provide a sufficient basis for making such a determination. *Id.* at *9. In particular, we observed that the trial court had not heard any proof relative to the allegations that had prompted the mother to file her modification petition. Given the absence of a record upon which the trial court could have made a best interest determination, we ultimately remanded the case for the trial court to conduct an evidentiary hearing. *Id.* at *10.

The animating concern from *Tuetken* and *Fletcher* cannot be ignored. Although parties may agree to a given parenting arrangement, such an agreement does not obviate the trial court's duty to ensure that it is in the children's best interests. As we stated in *Fletcher*, "the trial judge, and the trial judge alone, has the solemn duty to determine whether a given parenting arrangement is in the best interest of a child in his charge." *Id.* In this case, the trial court's June 3 order makes no finding as to whether or not the agreed-upon terms are in the minor child's best interests. Although it is true that the trial judge concluded the April 21 hearing by remarking that he was glad the parties had been able to work out their dispute "for the best interest of the child," there is no other discussion on the issue of the child's best interests. The record is simply devoid of sufficient findings that reflect the trial judge performed the solemn duty that is entrusted to him alone. It is not even entirely clear from the trial judge's concluding oral statement whether *he* considered the agreement to be in the child's best interests. Arguably, his statement can be construed as expressing his satisfaction that the *parties* had been able to reach a resolution on the best interest issue. The delegation of such an issue is not permissible.

Given the trial court's failure to conduct an appropriate best interests analysis, we conclude that it erred in denying Father's June 25 motion to alter or amend or vacate. That motion alerted the trial court to the fact that its June 3 order lacked findings on the best interests issue, but the trial court never cured this error. Although the absence of

11

findings on the best interests issue requires us to remand the case, we do not believe it is appropriate to remand this case for the sole purpose of allowing the trial court to explain why the agreed-upon parenting terms are in the child's best interests. Having reviewed the record transmitted to us, we are compelled to remand not only for appropriate findings, but also for an evidentiary hearing on the best interests issue. As in *Fletcher*, it is not clear from the record whether sufficient evidence existed upon which the trial court could have made a best interests determination. Here, although Mother apparently offered some testimony at the beginning of the April 21 hearing, the record transmitted to us is inconclusive as to the extent or nature of her testimony. The transcript of proceedings from the April 21 hearing does not contain Mother's testimony, but rather, includes only the recitation of the parties' announced agreement and the trial court's resolution of three issues that are not a source of contention in this appeal and do not have any relevance to the best interests issue. Under the circumstances presented, we find it appropriate to remand this case to the trial court to hold a hearing on and to make detailed findings of whether or not the agreed-upon terms of the modified parenting plan are in the minor child's best interests.

"[E]vents and lives have not stood still while this custody dispute has been in the courts." *Maxwell v. Woodward*, No. M2011-02482-COA-R3-CV, 2013 WL 2420500, at *22 (Tenn. Ct. App. May 31, 2013) (quoting *Gorski v. Ragains*, No. 01A01-9710-GS-00597, 1999 WL 511451, at *4 (Tenn. Ct. App. July 21, 1999)). The trial court should remain mindful of this fact. As we have previously explained, "when a trial court is directed to reconsider an issue on remand that involves the circumstances of children and their parents, 'the trial court should endeavor to ascertain and give effect to the parties' actual circumstances[.]'" *Kathryne B.F. v. Michael B.*, No. W2013-01757-COA-R3-CV, 2014 WL 992110, at *7 (Tenn. Ct. App. Mar. 13, 2014) (quoting *In re C.W.*, 420 S.W.3d 13, 22 (Tenn. Ct. App. 2013)). In this case, the trial court's best interests determination should consider the circumstances of the parties and minor child as they exist as of the date of the hearing on remand.

The trial court is in the unique position to determine the nature and extent of the hearing to be conducted. As we stated in *Fletcher*, the record must simply reflect a sufficient basis for determining whether the agreed-upon parenting arrangement is in the best interests of the child. *See Fletcher*, 2011 WL 4447903, at *10. The same holds true here. Although we are remanding for a hearing, we do not express an opinion on the particular evidence that is to be heard or considered on remand. We simply hold that the record must reflect a sufficient basis for making the bests interests determination. *See id.*

## Conclusion

In light of the foregoing, we hereby vacate the trial court's June 3, 2014 order, and remand the case to the trial court to hold a hearing on whether the announced agreement

12

is in the minor child's best interests, and for findings of fact and conclusions of law on this issue pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. Costs of this appeal are assessed one-half against the Appellant/Father, Jerone Trent Stricklin, and his surety, and one-half against the Appellee/Mother, Dana Jo Stricklin, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE