IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2022 Session

## JOHN BEAUMONT JONES v. SAMANTHA ROSE JONES

**Appeal from the Chancery Court for Maury County**
**No. 18-496        Christopher V. Sockwell, Judge**

### No. M2021-00788-COA-R3-CV

This case involves a custody dispute between a biological father and the maternal grandparents of two children. The children at issue were placed in the temporary custody of their maternal grandparents while the children's parents were in the midst of a divorce and were dealing with addiction issues. Father petitioned the court to regain full custody of the children. Ultimately, the court named maternal grandparents primary residential parents and provided father with 54 days of parenting time per year. Because the orders granting custody to the maternal grandparents were temporary, the chancery court should have applied the superior parental rights doctrine, rather than a material change in circumstances, when making its custody decision with respect to the father. Because the chancery court applied an incorrect legal standard when analyzing the case, we reverse the chancery court's order and remand the case for further proceedings in accordance with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed
and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

John Beaumont Jones, Columbia, Tennessee, pro se.

Samantha Rose Jones, Columbia, Tennessee, pro se.

William Patton and Tammy Patton, Columbia, Tennessee, pro se.

# OPINION

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

John Beaumont Jones ("Father") and Samantha Rose Jones ("Mother") were married in February 2013. The parties have two children—a boy born in 2010 and a girl born in 2016 (collectively, "the children"). Father filed a complaint for divorce in the Maury County Chancery Court ("chancery court") on September 28, 2018 stating that the children "are the subjects of a dependent and neglect action now pending in the Maury County Juvenile Court"[1] and that the children are in the custody of their maternal grandparents "who are good people." He explained that he had been "incarcerated in the Davidson County Drug Court" for the preceding sixteen months and was now out of the facility and in the process of "re-establishing his life and becoming stable." He acknowledged his prior drug addiction and explained he was now drug free. He believed he should "gain custody of the minor children . . . once he is stable and able to care for [them]." On December 20, 2018, Father filed a motion for default judgment stating that Mother had failed to respond to his complaint for divorce and that he was entitled to a default judgment. He further alleged that Mother was "currently pregnant by another man and is believed to have an addiction to drugs." Attached to his motion was a proposed permanent parenting plan.

On December 28, 2018, the chancery court entered an Order Granting Default Judgment and Final Decree of Divorce stating that Mother "failed to file any kind of responsive pleading to the complaint" despite being properly served. The chancery court held a hearing and found that Mother "is guilty of inappropriate marital conduct" and that the children "are the subject of a dependency and neglect litigation in the Juvenile Court . . . and that exclusive original jurisdiction remains with that Court . . . with respect to issues concerning care, custody, maintenance, and support of the children." The chancery court determined that all filings concerning "care, custody, maintenance, and support of the parties' two minor children" should be filed in the Maury County Juvenile Court ("juvenile court").

On November 3, 2020, Father filed a Motion to Dismiss, Motion for Return of Custody, and Motion to Transfer Case to Chancery Court in the Maury County Juvenile Court. In his motion, Father briefly recounted the history of the juvenile court proceedings which were initiated by the maternal grandparents on December 27, 2017. According to Father, maternal grandparents alleged in their dependency and neglect petition that Mother had been arrested for assaulting them; that Mother could not come to the maternal grandparents' residence as a result of her arrest; that, at the time, Father was in "drug court"

---

[1] We note that the record transmitted to this Court does not include the full record of the proceedings in the Maury County Juvenile Court. In particular, the record does not contain the pleadings or petition initiating the proceeding in the juvenile court.

in Nashville without a job, permanent residence, or vehicle; and that Mother also had no job, permanent residence, or vehicle. Father stated that "temporary custody of the minor children was vested in the maternal grandparents." Indeed, a "Temporary Custody Order" entered by the Maury County Juvenile Court on January 31, 2018, appears as an exhibit to one of Father's pro se motions, and it states:

> This matter came before the court on January 26, 2018, as a dependent and neglect case. After discussion between the Court, the maternal grandparent and the mother, they agreed that the maternal grandparents should have temporary custody of the children. The mother and children are living with the maternal grandparents and anticipate continuing to do so. Mother has cooperated with the Tennessee Department of Children Services and is taking advantage of programs that will help her regain custody. When she is ready to have custody returned to her, mother may file a motion to review this matter. The order is temporary in nature. Father is presently incarcerated in Nashville and could not be transported for this hearing. This order does not affect his parental rights, until he is served process and has an opportunity to address the court. When father is released he may ask for a hearing at any time.

Father further stated that he successfully completed the Davidson County Drug Court program and was "released to probation" on September 26, 2019, and "post of his release, [he] set about to live an exemplary life" and is "now stable in every sense of the word[.]" Father asserted that "[t]here is no legal basis for the grandparents to maintain custody of these children" and that custody should be "vested with father in an order that directs all future custodial matters for these children to be determined by the Chancery Court for Maury County."

The juvenile court held a hearing at which Father, his counsel, Mother, and the maternal grandparents were present. The juvenile court entered an Order on November 13, 2020 finding as follows:

> 1. The issues of this case are better served by a hearing before the Maury County Chancery Court, in the post-divorce matter of the parents . . . . It is anticipated by the Court that counsel for the father will set a hearing for the issue of temporary custody on that Court's docket. At 9:00 a.m. on the date of that noticed hearing in Chancery Court, this matter shall be summarily dismissed, and all future matters of any kind relating to custody and visitation and support of these minor children, as between the parents, shall be heard and decided by the Maury County Chancery Court. If for some reason the first set Maury Chancery hearing is continued, this case shall nevertheless be dismissed and an emergency pendente lite disposition of the children and their custody shall be within the sole discretion and jurisdiction of that court.

Counsel for father shall submit an order of dismissal for entry that morning in accordance with the above terms.

2.      Until this matter is dismissed as described above or otherwise, the parents shall have visitation with the minor children as follows:

(a)      The father shall have visitation every other Sunday and Tuesday, beginning with Sunday, November 15 and Tuesday, November 17. For the first two Tuesdays, the father's time with the children shall be from pickup from school or daycare until 8:00 p.m. that evening. For the first two Sundays, the father's time shall be from 8:00 a.m. until 8:00 p.m. that evening. For all following Sunday and Tuesday visitations, the father's time shall be overnight, and shall be on Tuesday from school or daycare overnight until return to school or daycare the following morning by 8:00 a.m., and on Sundays from 8:00 a.m. until Monday morning, returning them to school or daycare by 8:00 a.m. If father obtains a clean hair follicle drug screen and presents the results to the Court, his visitation shall be expanded to overnight immediately, even if prior to the schedule set forth above. Father shall further have visitation for Thanksgiving Day, November 26, 2020, from 9:00 a.m. until 1:00 p.m. Unless otherwise agreed or unless indicated above as a pickup or return from or to school or daycare, visitation exchanges with the father shall take place in front of the Columbia Police Department.

(b)      The mother shall have visitation supervised by her parents at the maternal grandparent's home as they may agree; AND

(c)      Upon jurisdiction being vested in the Maury County Chancery Court as described above, any and all issues as to custody and visitation of these children shall be decided by that court at that time, including any and all issues of pendente lite or emergency custody for the subject children.

Also on November 13, 2020, Father filed a petition for custody and entry of permanent parenting plan in the Maury County Chancery Court asserting that there had been a "change of circumstances regarding his own personal life" and that "he is completely stable, personally, financially, and otherwise" and that he has "done everything humanly possible to correct his past sins." On November 16, 2020, Father filed an amended motion for entry of temporary parenting plan in the Maury County Chancery Court stating that jurisdiction regarding "custody of the minor children . . . rest[s] with this Court" and that it is in the "manifest best interests of the minor children that they live in his temporary and permanent custody."

On December 18, 2020, the juvenile court entered an order stating in its entirety as follows:

Based upon this Court's order as entered on November 13, 2020 in the above styled cause, and based upon the recognition that the same parties are set to be heard regarding temporary custodial issues before the Maury County Chancery Court in the case of John Beau Jones v. Samantha Rose Jones, Docket No. 18-496, the Court does hereby dismiss this action.

The chancery court held a hearing on December 18, 2020 at which Father, Mother, and the maternal grandparents testified. The court entered an order on December 21, 2020 summarizing the status of the case as follows:

The Father . . . having previously filed an amended motion for entry of a temporary parenting plan on November 16, 2020. The rationale for said motion was due to a petition filed on November 13, 2020, for custody and entry of a permanent parenting plan with regard to the parties' two minor children, as the previous final decree of divorce did not deal with the custody, care, or maintenance of said minor children due to jurisdiction over the children being held by the Maury County Juvenile Court in Case No. 2017-JV-392. As the case was a dependency and neglect petition, the maternal grandparents of the children were granted temporary custody.

The court stated that the children have resided with the maternal grandparents since January 2018; that the juvenile court awarded Father visitation with the children two days every two weeks; and that jurisdiction over custody arrangements for the children is vested in the chancery court rather than the juvenile court. The court further stated:

At the time of the hearing, neither party had any verifiable proof that drug issues had been addressed. The father, pursuant to pleadings in the Juvenile Court, as well as representations made by the Court, had been in Davidson County drug court and was incarcerated for approximately a year and was receiving treatment. In addition, the mother has also indicated that she had previous drug issues which led to the removal of the minor children from her custody. The mother testified she had overcome her drug issues as well.

The Court finds that, until both parties can provide verification of their rehabilitation, the Court will keep the visitation schedule as set out by the Juvenile Court, in its Order of November 13, 2020, in effect until this matter can be heard on January 12, 2021. Both parties are ordered to take and provide the results of a hair follicle test prior to January 12, 2021. In addition, both parties are to provide any and all proof of treatment and/or rehabilitation that they've undergone since the original Juvenile Court order was entered giving the maternal grandparents custody of the minor children. The Court

finds that, until the hearing on January 12, the maternal grandparents shall remain and shall have custody of the minor children.

The court then set forth a specific parenting plan schedule and required the parties to return to court for a hearing on January 12, 2021, to:

provide their drug tests as well as completion of any addiction or rehab treatment regarding any drug issues. Both parties are to provide photos of their residences, as well as proof of where they are working and income, as well as any other evidence which may show their stability going forward and competency for taking care of their minor children on an ongoing basis.

A second hearing was held in chancery court on January 12, 2021. Neither Mother nor Father had results of the drug tests that the chancery court previously requested them to take.[2] The court held that the maternal grandparents were essential parties to the case because the children had been in their custody early 2018. The court noted that:

. . . it appeared that [Father] was requesting the Court to consider the case before it without considering the status of the case for the prior two years. . . . The Court finds this case (in Chancery) is a continuation of the Juvenile Court matter . . . . This Court previously found that at the hearing on December 18, 2020, it did not have enough information to determine whether either or both parents were fit to be a residential parent or that the parents were in a position to have joint parenting responsibilities.

The court stated it would not make a decision to modify the existing custody arrangement until Father completed a drug test.

A third hearing was held via Zoom on January 22, 2021, during which Father, Mother, and maternal grandparents presented documents and testimony. By order entered January 29, 2021, the court appointed a guardian ad litem for the children and requested a home study to be performed by DCS. The court noted that Father had "not brought forth evidence to adequately determine [his] competency in caring for the two minor children on an ongoing basis" and that he had failed to provide proof of income and/or documentation proving his work status. The court reiterated that it needed the additional information because both Mother and Father had "admitted to having addiction issues regarding methamphetamine." Regarding Father's demeanor during the proceedings, the court stated:

---

2 In his brief, Father states, "Both parents submitted passing hair follicle drug screens, and the father submitted the certified records of his rehab lasting over a year." This statement was unsupported by any citation to the record, and we have not found the results of the drug test present in the record on appeal.

The Father/Petitioner in this case has repeatedly made the claim that the children would be best served by living with him, despite the fact that, in all three court appearances, he has failed to provide information requested by the Court, and the Father's behavior has been inappropriate, as he has talked over witnesses and talked over the Court when the Court was explaining his decisions, such that the Court was forced to mute Father on numerous occasions in order to complete comments and/or explain the rationale for any decisions.

Maternal grandparents retained custody of the children with Father having visitation on weekends. On February 1, 2021, Father filed a motion for an interlocutory appeal, which the trial court denied by order entered February 11. The court stated, in relevant part, that "there is no need to prevent needless expensive and protractive litigation, as the challenged orders are only temporary. It is anticipated that a final hearing will occur upon the completion of the DCS home study and investigation of the Guardian Ad Litem."

On February 12, 2021, maternal grandparents filed a pro se petition requesting the court to "remove the visitation of [Father] due to case #721004031[3] with the Maury County Sheriffs Department." They asserted they were "not comfortable with [Father] having said children in his presence alone or in a vehicle with him at any time."

On February 25, 2021, the chancery court entered an order rescheduling the hearing in order to give the guardian ad litem more time to prepare a home study and investigation. A hearing was held on March 20, 2021 at which Father, Mother, Mother's boyfriend, maternal grandparents, Mother's paternal aunt, and the guardian ad litem were present. There is no transcript from the hearing in the record. The chancery court entered an order on April 5, 2021, establishing a "temporary residential sharing schedule" providing Father with parenting time every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. The court imputed income to Father and set his child support obligation at $528 per month. The court approved the guardian ad litem's fee and required the parties to pay the fee of $3,812.02 at the rate of $100 per month until it is paid in full. In May 2021, Mother and Father filed competing parenting plans.

The trial court held a hearing on June 4, 2021, at which Father, Mother, Mother's boyfriend, maternal grandparents, and the guardian ad litem were present. By order entered on July 19, 2021, the Court made the following "findings of fact":

---

[3] A "Booking Intake Details" document was attached to maternal grandparents' petition showing Father had been charged with "leaving accident scene, failure to report"; "immediate notice of accident"; "simple possession of sch VI (Marijuana)"; "No Insurance"; and "Drivers to Exercise Due Care" on January 29, 2021.

1. The Court has considered the statutory factors as set out in Tennessee Code Annotated § 36-6-106 and in accordance with *Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. 2015), and finds the residential sharing schedule, as well as the Orders found herein, to be in the best interests of the minor children. The Court further finds that it would be detrimental to the best interests and welfare of the minor children were they allowed to return to the primary residential care of either Mother or Father.

2. The minor children . . . shall remain in the primary care of [maternal grandparents] pending further orders of this Court. The Court affirmatively finds the Permanent Parenting Plan that has previously been submitted to be incorporated herein by reference, as it is in the best interest of the minor children.

3. The Court further finds that the parties and all adults shall refrain from conversations with the minor children regarding their interactions with the Guardian ad Litem.

4. In addition, the Court finds that none of the parties and/or adults shall make derogatory comments regarding the other parties and/or parents in front of the minor children, nor shall they attempt to influence the children as far as where they want to stay and/or visit.

5. The minor child . . . shall continue counseling services offered through Centerstone in the Maury County School system. All parties will cooperate fully to ensure the minor child receives care and shall follow all recommendations. All parties including the Maternal Grandparents, shall participate in any family counseling that may be recommended by the Centerstone counselor and shall follow all recommendations.

6. The minor child . . . shall continue in Tae Kwon Do and shall continue taking his medication as prescribed.

7. The Guardian ad Litem's affidavit is approved, and the Guardian ad Litem is awarded a fee of $1,950. The Clerk is ordered to pay as much of said sum as the parties have paid in, and the parties shall continue to pay the Guardian ad Litem's fee at the rate of $100 per month to the Clerk & Master. . . .

8. In making these findings of fact, the Court has weighted the credibility of the parties and witnesses. The Court finds [maternal grandparents] to be credible and the Court finds neither Mother nor Father to be credible. The Court also finds that Father and Mother's boyfriend had an altercation on March 30, 2021, when Father instigated an altercation, and it further appeared that the boyfriend . . . was more than willing to take part in said quarrel. The Court finds that Father and [Mother's boyfriend] are not to have contact with each other. The Court is especially troubled by the testimony of the Mother's boyfriend . . . as he testified he discussed adoption of the minor child . . . with said child. This Court finds said discussion to be wholly inappropriate and unacceptable.

9. Regarding the Guardian ad Litem's motion to ascertain the status of Father's driver's license, the Court finds that Father has a valid Florida driver's license, but not a valid Tennessee license.

The chancery court awarded Father 54 days of parenting time per year as set forth in an incorporated permanent parenting plan order.

Father filed a motion to reconsider; the trial court summarily denied the motion by order entered October 15, 2021. Father appeals.[4]

STANDARD OF REVIEW

We review a trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). As for conclusions of law, we review them de novo with no presumption of correctness. TENN. R. APP. P. 13(d).

ANALYSIS

In this pro se appeal, Father articulates seventeen issues for our consideration; however, we have determined that the dispositive issue in this case, raised in a roundabout way in several of the multiple issues, is whether the chancery court implemented the appropriate legal standard to resolve the competing claims of custody between a parent and a non-parent. The trial court stated it "considered the statutory factors as set out in Tennessee Code Annotated § 36-6-106" and relied on the case of "*Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. 2015)" in rendering its decision. As will be discussed in detail below, this was not the appropriate inquiry for the court.

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Troxel v. Granville*, 530 U.S. 57, 57 (2000) (citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). "Persons who are not a child's biological parent, however, do not have the same constitutionally protected interests as are possessed by a biological parent." *Bryan v. Miller*, No. M2015-00550-COA-R3-CV, 2016 WL 4249291, at *8 (Tenn. Ct. App. Aug. 8, 2016) (citing *Ray v. Ray*,

---

[4] There is no transcript or statement of the evidence, and there is no appellee's brief. Generally, "in the absence of a transcript or statement of the evidence, there is a conclusive presumption that there was sufficient evidence before the Trial Court to support its judgment." *Outdoor Mgmt. LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007). However, in cases where a transcript is not present, we may examine "those issues where appellate review is not hindered by the absence of a transcript or statement of the evidence." *Am. Express Centurion Bank v. Lowrey*, No. E2011-01247-COA-R3-CV, 2013 WL 937831, at *4 (Tenn. Ct. App. Mar. 11, 2013). In those circumstances, "we are limited to addressing those issues which raise pure questions of law, as well as any issues challenging the trial judge's application of the law to the facts *as stated by the judge himself* in his memorandum opinions." *Gross v. McKenna*, No. E2005-02488-COA-R3-CV, 2007 WL 3171155, at *3 (Tenn. Ct. App. Oct. 30, 2007). Whether the chancery court applied the appropriate legal standard, is a question of law which we can review without a transcript or statement of the evidence.

83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).  This Court has determined that, generally speaking, "when faced with competing custody claims by a biological parent and a third party, the courts must favor the biological parent." *Ray*, 83 S.W.3d at 732.

In *In re Askew*, our Supreme Court, considered the legal standard to apply in custody disputes between parents and non-parents and held:

> a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child. Only then may a court engage in a general "best interest of the child" evaluation in making a determination of custody.

*In re Askew*, 993 S.W.2d 1, 4 (Tenn. Ct. App. 2002) (quoting *In re Adoption of Female Child*, 896 S.W.2d 546, 548 (Tenn. 1995)).  Similarly, in *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002) (*superseded by statute on other grounds as recognized in Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013)), our Supreme Court recognized that in light of parents' fundamental right "to have the care and custody of their children[,]" courts that are "deciding initial custody disputes" must give parents "a presumption of 'superior parental rights' regarding the custody of their children." *Blair*, 77 S.W.3d at 141 (citing *In re Askew*, 993 S.W.2d at 4).  Thus, in an initial custody dispute between a parent and a non-parent, "the non-parent has the burden of establishing by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the parent."  *In re R.D.H.*, No. M2006-00837-COA-R3JV, 2007 WL 2403352, at *6 (Tenn. Ct. App. Aug. 22, 2007) (citing *Ray*, 83 S.W.3d at 732-33)).  If the court makes a finding of substantial harm, then it may "engage in a general 'best interest of the child' evaluation in making a determination of custody."  *In re Adoption Female Child*, 896 S.W.2d at 548.

A different analysis may apply, however, when a parent seeks to modify an existing custody order that vests custody with a non-parent.  *In re R.D.H.*, 2007 WL 2403352, at *7.  In particular, the *Blair* Court determined that "a parent who is given the opportunity to rely upon the presumption of superior rights in an initial custody determination may not again invoke that doctrine to modify a valid custody order."  *Blair*, 77 S.W.3d at 148. Instead, when a parent has already been given an opportunity to rely upon the presumption of superior rights in an initial custody determination "a trial court should apply the standard typically applied in parent-vs-parent modification cases[,]" which is whether "a material change in circumstances has occurred, which makes a change in custody in the child's best interests."  *Id.* at 148.  However, the *Blair* Court carved out four "extraordinary circumstances" in which parents continue to hold a presumption of superior rights against a non-parent:

> (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring

- 10 -

custody from the natural parent is invalid on its face; and (4) when the natural parent cedes only temporary and informal custody to the non-parents.

*Id.* at 143; *see also Bryan*, 2016 WL 4249291, at *9 ("[T]he fact that a non-parent has been awarded custody of a child does not necessarily prevent a biological parent from successfully asserting superior parental rights in a proceeding to regain custody of the child."). When any of the four scenarios listed above are present in a case, the "protection of the natural parent's right to have the care and custody their child demands that they be accorded a presumption of superior parental rights against claims of custody by non-parents." *In re R.D.H.*, 2007 WL 2403352, at *7 (citing *Blair*, 77 S.W.3d at 143)). Moreover, this Court has held that we must focus on the "finality of the initial order, and not on the length of time that the custody arrangement has persisted." *Id.* at *9.

Turning to the case before us, we consider whether any of the four "extraordinary circumstances" listed in *Blair* apply here. If any one of the factors applies, Father retains his superior parental rights, and maternal grandparents were required to show that the children would be exposed to substantial harm if returned to Father. *See In re Hannah V.S.*, No. M2011-01557-COA-R3-CV, 2012 WL 6114984, at *3 (Tenn. Ct. App. Dec. 7, 2012) (citing *Blair*, 77 S.W.3d at 148) (noting that when an initial order grants "only temporary custody to the non-parents, the parent is entitled to invoke the doctrine of superior rights"). In this case, the order providing custody to the maternal grandparents was "temporary" in nature, and therefore the fourth "extraordinary circumstance" described in *Blair* is implicated. This Court has previously considered and applied the fourth extraordinary circumstance in cases of temporary awards of custody to a grandparent and has determined that, "[a]lthough the entry of an order awarding custody of a child to a non-parent generally prohibits the child's natural parents from thereafter asserting superior parental rights regarding the child, this is not true where the order 'grants only temporary custody to the non-parent[].'" *Bryan*, 2016 WL 4249291, at *9 (quoting *Blair*, 77 S.W.3d at 148)). The difference between a temporary order and a final order is follows:

> The law makes a distinction between temporary and final orders of custody. An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do. Trial courts have discretion to grant temporary custody arrangements in circumstances where the trial court does not have sufficient information to make a permanent custody decision or where the health, safety, or welfare of the child or children are imperiled.

*Warren v. Warren*, No. W1999-02108-COA-R3-CV, 2001 WL 277965, at *4 (Tenn. Ct. App. Mar. 12, 2001) (citations and quotations omitted).

The initial order entered by the juvenile court in December 2018 was entitled "Temporary Custody Order" and explicitly stated, "The order is temporary in nature. Father is presently incarcerated in Nashville and could not be transported for this hearing. This order does not affect his parental rights, until he is served process and has an opportunity to address the court." In every subsequent order, in either the juvenile or chancery court, the children's custody arrangement was characterized as "temporary." For example, when the chancery court summarized the case history in the December 21, 2021 order, the court stated:

> the previous final decree of divorce did not deal with the custody, care, or maintenance of said minor children due to jurisdiction over the children being held by the Maury County Juvenile Court . . . the case was a dependency and neglect petition, the maternal grandparents of the children were granted *temporary* custody.

(Emphasis added). Similarly, when the chancery court ruled on Father's request for an interlocutory appeal, it stated, "there is no need to prevent needless expensive and protractive litigation, as the challenged orders are only *temporary*." (Emphasis added). Accordingly, in the case before us, maternal grandparents were provided with only temporary custody of the children, and Father was entitled to the presumption of superior parental rights when seeking to regain custody or modify the temporary order. Therefore, maternal grandparents bore the burden of showing, by clear and convincing evidence, that the children would be exposed to substantial harm if they were placed in the custody of Father. *In re Askew*, 993 S.W.2d at 4; *Hall v. Bookout*, 87 S.W.3d 80, 86 (Tenn. Ct. App. 2002) (explaining that "the non-biological parent has the burden of establishing by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the biological parent"). We proceed to analyze the chancery court's order to determine whether the court applied this standard to Father.

The chancery court's order states that it ruled in "accordance with *Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. 2015)," and found that the residential sharing schedule naming maternal grandparents as the children's "primary residential parent" was in the best interests of the children. The *Stricklin* case involved a post-divorce modification of a permanent parenting schedule between the Mother and Father of a minor child. *Stricklin*, 490 S.W.3d at 10. When determining whether the permanent parenting plan should be modified in that case, the *Stricklin* court discussed the legal standards for modification of an agreed parenting plan and the best interests analysis that applies in a post-divorce parenting dispute. *Id.* at 15. There was no non-parent custodian at issue in *Stricklin*, and the *Stricklin* court did not engage in any substantial harm analysis. As we have explained, the appropriate inquiry for the court was whether the children would be exposed to substantial harm if they were placed in the custody of Father. *See In re R.D.H.*, 2007 WL 2403352, at *6. By relying on the legal principles in *Stricklin*, the chancery court was operating under an inapplicable legal standard. "While trial courts necessarily have broad

- 12 -

discretion when fashioning a custody arrangement based on the unique circumstances present in an individual case, we must reverse such decisions when the lower court applies an incorrect legal standard." *Baker v. Smith*, No. W2004-02867-COA-R3JV, 2005 WL 1848477, at *9 (Tenn. Ct. App. Aug. 5, 2005) (citing *Engel v. Young*, No. M2001-00734-COA-R3-CV, 2003 WL 1129451 (Tenn. Ct. App. Mar. 14, 2003); *see also Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). In light of the trial court's application of the incorrect legal standard, we must reverse the case and remand it to the chancery court.

On remand, the maternal grandparents bear the burden of showing by clear and convincing evidence that the children would be exposed to substantial harm if placed in Father's custody. *See Sharp v. Stevenson*, No. W2009-00096-COA-R3-CV, 2010 WL 786006, at *6 (Tenn. Ct. App. Mar. 10, 2010); *In re B.C.W.*, No. M2007-00168-COA-R3-JV, 2008 WL 450616, at *3 (Tenn. Ct. App. Feb. 19, 2008). Although our courts have acknowledged it is difficult to set out a precise definition of "substantial harm," we have determined: (1) there must be "'a real hazard or danger [to the child] that is not minor, trivial, or insignificant'"; and (2) "'the harm must be more than a theoretical possibility . . . it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.'" *In re R.D.H.*, 2007 WL 2403352, at *11 (quoting *Ray*, 83 S.W.3d at 732). Furthermore, this Court has provided the following helpful guidance:

> In order to determine whether a parent poses a risk of substantial harm, courts may inquire into a person's fitness as a parent. *In re Caleb B.*, [No. 2013-02564-COA-R3-JV.] 2015 WL 1306755, at *5 [(Tenn. Ct. App. Mar. 19, 2015)] (citation omitted). Naturally, as a part of their efforts to assess a party's present parental fitness, courts may consider past conduct and events. *Id.* With that said, "[c]ustody decisions should not be used to punish parents for past misconduct or to award parents for exemplary behavior." *Ray*, 83 S.W.3d at 734 (citations omitted). The courts recognize that parents are able to turn their lives around, and custody decisions should "focus on the parties' present and anticipated circumstances." *Id.* (citations omitted). In this vein, "courts may and should consider past conduct to the extent that it assists in determining a person's current parenting skills or in predicting whether a person will be capable of having custody of a child." *Id.* Importantly, "consideration of past conduct must be tempered by the realization that the persons competing for custody, like other human beings, have their own virtues and vices." *Id.* (citation omitted). Among other things, courts must consider "the nature and severity of the past conduct in relation to the welfare of the child, when the conduct occurred, and what remedial actions, if any, the parent has taken." *In re D.J.R.*, No. M2005-02933-COA-R3-JV, 2007 WL 273576, at *6 (Tenn. Ct. App. Jan. 30, 2007). Biological parents are not required to prove that they are perfect in order to be granted custody. *Ray*, 83 S.W.3d at 734.

*Bryan*, 2016 WL 4249291, at \*12.  Upon remand, the trial court should provide findings with respect to whether the children will be subjected to substantial harm if returned to Father.

CONCLUSION

Because the chancery court applied an erroneous legal standard to resolve the custody dispute between the parties, we must reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.  Costs of this appeal are assessed against the appellant, John Beaumont Jones, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE